UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X

AA MEDICAL P.C.,                                              Case No.: 20-cv-03852
                                                             (DG)(JMW)

                              Plaintiff,

              -against-

KHALED ALMANSOORI, M.D.,

                              Defendants.
-------------------------------------------------------------------------X


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS THE AMENDED COMPLAINT
<u>PURSUANT TO FED. R. CIV. P. 12(b)(6)</u>**


                              Respectfully submitted,
                              **LAW OFFICES OF
                              DAVID A. ANTWORK, P.C.**


                       By: _____s/_____
                              DAVID A. ANTWORK (DA1168)
                              1757 Merrick Avenue, Suite 207
                              Merrick, New York 11566
                              T: (516) 757-5634
                              F: (516) 746-2611
                              dantwork@davidantworklaw.com
                              *Attorneys for Plaintiff*

## TABLE OF CONTENTS

Table of Authorities.........................................................................................................ii

PRELIMINARY STATEMENT.......................................................................................1

STATEMENT OF FACTS................................................................................................2

ARGUMENT.....................................................................................................................7

      I.     MOTION STANDARD.........................................................................................7

            A.     Standard on a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)..........7

            B.     Defendant's Attempt to Summarily Resolve Factual Issues is
                  Wholly Premature and Improper on a Fed. R. Civ. P. 12(b)(6)
                  Motion to Dismiss.........................................................................................8

      II.    THE PLAINTIFF HAS STATED A CAUSE OF ACTION FOR FRAUD.............9

      III.   THE PLAINTIFF HAS STATED A CAUSE OF ACTION FOR
           PRIMA FACIE TORT.......................................................................................16

      IV.   THE PLAINTIFF HAS STATED A CAUSE OF ACTION FOR A
           VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT.....................18

      V.    THE PLAINTIFF HAS STATED A CAUSE OF ACTION FOR
           UNJUST ENRICHMENT..................................................................................21

      VI.   PLAINTIFF'S CLAIMS ARE NOT PREMISED ON STATEMENTS
           PROTECTED BY LITIGATION PRIVILEGE...................................................22

      VII.  THIS ACTION SHOULD NOT BE DISMISSED DUE TO
           A PRIOR PENDING ACTION...........................................................................22

CONCLUSION................................................................................................................24

## <u>TABLE OF AUTHORITIES</u>

### <u>Federal Authority</u>

*101 McMurral LLC v. Porter,*
2012 WL 997001 (S.D.N.Y.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

*ADYB Engineered for Life, Inc. v. Edam Admin. Servs.,*
2021 U.S. Dist. LEXIS 59666 (S.D.N.Y) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

*American Bank & Trust Co. v. Federal Bank,*
256 U.S. 350, 358 (1921) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

*Aquetron Med., Inc. v. Dyro,*
999 F.Supp. 294 (E.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544, 555 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

*Bernstein v. Seeman,*
601 F.Supp. 2d 555, 556 (S.D.N.Y. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9,22

*Best v. NYC Dept. of Correction,*
14 F.Supp. 3d 341, 349 (S.D.N.Y. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

*Bose v. Interclick, Inc.,*
2011 U.S. Dist. LEXIS 93633 (S.D.N.Y.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Branum v. Clark,*
927 F.2d 698 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

*Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.,*
98 F.3d 13, 20 (2d Cir.1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

*Capone v. Goldman,*
2010 U.S. Dist. LEXIS 165642 (E.D.N.Y.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

*Carswell v. Air Line Pilots Ass'n., Intern.,*
540 F.Supp. 2d 107, 114 (D.D.C. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Calyon v. Mixuho Securities USA, Inc.,*
2007 WL 2618658 (S.D.N.Y.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

*Chacko v. Worldwide Flight Services, Inc.*,
2010 WL 424025 at *1 (E.D.N.Y. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

*Church of Scientology v. Siegelman*,
94 F.R.D. 735 (S.D.N.Y. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Colina v. One E. River Place Realty Co.*,
2000 U.S. Dist. LEXIS 11728, at *20 (S.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

*Curtis v. Citibank, N.A.*,
226 F.3d 133, 139 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

*CVD Equip. Corp. v. PrecisionFlow Techs., Inc.*,
2007 U.S. Dist. LEXIS 21717 (N.D.N.Y.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

*Deutsch v. Human Res. Mgmt.*,
2020 U.S. Dist. LEXIS 65926, at *11 (S.D.N.Y.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Eavzan v. Polo Ralph Lauren Corp.*,
40 F.Supp.2d 147 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

*Elmaghraby v. Ashcroft*,
2005 U.S. Dist. LEXIS 21434 at *68 (E.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

*Escalera v. N.Y.C. Hous. Auth.*,
425 F.2d 853, 857 (2d Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

*Golden Pac. Bancorp v. FDIC*,
273 F.3d 509 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

*Hermant Patel M.D., P.C. v. Bandikatala, M.D.*,
2019 WL 6619344 (S.D.N.Y. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

*In re Initial Pub. Offering Sec. Litig.*,
241 F.Supp.2d 281 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17,18

*International Cabletel Inc. v. Le Group Videotron LTEE*,
978 F.Supp. 483 (S.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

*Jung v. Chorus Music Studio, Inc.*,
2014 U.S. Dist. LEXIS 128103 (S.D.N.Y.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Karsch v. Blink Health Ltd.*,
291 F.Supp.3d 503 (S.D.N.Y. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

*Key Bank N.A. v. Quality Payroll Sys.*,
2007 U.S. Dist. LEXIS 118327 (E.D.N.Y) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

*Law Firm of Omar T. Mohammedi, LLC v. Comput. Assisted Prac. Elec. Mgmt. Sols.*,
2019 WL 3288390, at *7 (S.D.N.Y. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

*Lenco Diagnostic Laboratories, Inc. v. McKinley Scientific, Inc.*,
2016 WL 8711341 (E.D.N.Y. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Loreley Financing (Jersey) No. 3 Limited v. Wells Fargo Securities, LLC*,
797 F.3d 160, 170 (2d Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

*McSpadden v. Caron*,
2004 U.S. Dist. LEXIS 28673 (W.D.N.Y.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Nationwide Tarps, Inc. v. Midwest Canvas Corp.*,
228 F.Supp.2d 202 (N.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16,17

*Office Max Inc. v. Cinotti*,
966 F.Supp.2d 74 (E.D.N.Y 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

*Phelps v. Kapnolas*,
308 F.3d 180, 184-85 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Pierce v. Marano*,
2002 WL 1858772, at *3 (S.D.N.Y. Aug. 13, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Register.com, Inc. v. Verio, Inc.*,
356 F.3d 393 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

*Register.com, Inc. v. Verio, Inc.*,
126 F.Supp.2d 238 (S.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

*Sacerdote v. Cammack Larhette Advisors, LLC*,
939 F.3d 498, 504 (2d Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

*State v. Barclays Bank*,
76 N.Y.2d 533 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

*Sudler v. City of New York*,
2010 WL 68095 at *5 (S.D.N.Y. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

*Sudul v. Computer Outsourcing Services*,
768 F.Supp. 59 (S.D.N.Y. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

*The Haytian Republic,*
154 U.S. 118, 124, 14 S. Ct. 992, 38 L. Ed. 930 (1894) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

*Trustees of Empire State Carpenters Annuity, Apprenticeship, Labor-Management*
*Cooperation, Pension and Welfare Funds v. Dykeman Carpentry, Inc.,*
2014 WL 976822 at \*5 (E.D.N.Y. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

*Turret Labs USA, Inc. v. CargoSprint, LLC,*
2021 U.S. Dist. LEXIS 27838, at \*20 (E.D.N.Y.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

*Universal City Studios, Inc. v. Nintendo Co.,*
797 F.2d 70, 79 (2d Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

*Wild Bunch, SA v. Vendian Entertainment, LLC,*
256 F.Supp.3d 497 (S.D.N.Y. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

**State Authority**

*Burns Jackson Miller Summit & Spitzer v. Lindner,*
59 N.Y.2d 314, 332 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

*Channel Master Corp. v. Aluminum Ltd. Sales, Inc.,*
4 N.Y.2d 403, 407 (1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

*Deerfield Commc'ns Corp. v. Chesebrough-Ponds, Inc.,*
68 N.Y.2d 954, 956 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12,13

*Eurycleia Partners, LP v. Seward & Kissel, LLP,*
12 N.Y.3d 553, 559 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*First Bank of Americas v. Motor Car Funding, Inc.,*
257 A.D.2d 287 (1st Dept. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

*Graubard, Mollen, Dannett & Horowitz v. Moskovitz,*
86 N.Y.2d 112 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

*RKB Enterprises Inc. v. Ernst & Young,*
182 A.D.2d 971, 972–73 (3rd Dept. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Sabo v. Delman,*
3 N.Y.2d 155 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

**Statutes, Codes and Regulations**

18 U.S.C. § 1030(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

**<u>Secondary Sources, Hornbooks and Treatises</u>**

Prosser and Keeton, Torts § 109, at 763 [5th ed]) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Plaintiff AA MEDICAL P.C. ("AA Medical" or "Plaintiff"), by its attorneys, the Law Offices of David A. Antwork, P.C., respectfully submits this memorandum of law in opposition to Defendant KHALED ALMANSOORI's ("Almansoori" or "Defendant") motion to dismiss the Verified Amended Complaint (the "Complaint")[1] for a purported failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

Almansoori manipulated the immigration process and used AA Medical and its principal as a pawn to enter the United States with no intention of meaningfully working for the company. The only reason Almansoori is in the United States is because of his fraud against AA Medical and his manipulation of the immigration process. The Complaint sufficiently alleges each of the key required elements of the claims alleged, bolstered by a voluminous set of facts in support thereof.

At its core, Almansoori's motion to dismiss is really a premature motion for summary judgment. Almansoori's attempt to preemptively argue the merits of the claims, without the benefit of discovery, is inappropriate on his 12(b)(6) motion.

Further, contrary to Almansoori's arguments, AA Medical's allegations do not sound in contract and are not duplicative of the contract claims pleaded in the Suffolk County action(s). Almansoori's failure to properly meet his obligations under his employment agreement with AA Medical by failing to meet hourly working requirements, failing to comply with reporting requirements, failing to provide services in a professional manner, etc., is completely distinct from his fraudulent scheme in duping AA Medical to sponsor Almansoori's H-1B visa for immigration

---

[1] Inasmuch as the Defendant failed to annex a copy of the Complaint to his motion to dismiss, the Complaint, together with its exhibits, are collectively annexed as Exhibit "1" to the Declaration of David A. Antwork, dated October 15, 2021.

1

purposes which, as alleged in the Complaint, negatively impacts AA Medical's standing with the Department of Homeland Security-United States Citizenship and Immigration Services ("USCIS") and its ability to participate in the program. Almansoori's failure to properly meet his obligations under his employment agreement with AA Medical is also completely distinct from Almansoori's unauthorized access and wrongful disclosure of AA Medical's patient information in violation of HIPAA. It is these wrongful actions which form the basis of the claims herein, not Almansoori's failure to perform under the parties' agreement.

Finally, Almansoori's assertion that this action is barred by the existence of a prior pending action is meritless. While AA Medical, under the guidance of its prior counsel, did commence multiple separate lawsuits against Almansoori for his egregious wrongs (after Almansoori instituted his own litigation), the three Eastern District actions have been consolidated herein, all extraneous and/or duplicative claims have already been withdrawn, and the Southern District action has been withdrawn as incorporated herein. The remaining actions in Suffolk County pertain strictly to Almansoori's non-performance and breach of certain provisions of the Agreement.

The Complaint has alleged facts that plausibly support each of the claims pleaded and thus must survive Almansoori's pre-answer motion to dismiss.

## STATEMENT OF FACTS[2]

AA Medical maintains orthopedic treatment and surgical offices within the State of New York with a main office located in Stony Brook, New York. (Complaint ¶9). Dr. Nakul Karkare, M.D. is the president/owner of AA Medical. (Complaint ¶10). Almansoori is an orthopedic surgeon and Canadian national. (Complaint ¶¶11-12).

---

[2] The following statement of facts is taken directly from the voluminous set of detailed facts set forth in the Complaint.

In February 2018, Almansoori contacted AA Medical to apply for a position as an orthopedic surgeon requesting that AA Medical sponsor him for an H-1B visa. (Complaint ¶13). AA Medical interviewed Almansoori in March 2018 and offered Almansoori a full-time position as an orthopedic surgeon in AA Medical's New York offices. AA Medical agreed to sponsor Almansoori's H-1B visa in this regard and under these pretenses. (Complaint ¶14). AA Medical sponsored Almansoori for his H-1B visa for specialty occupations; and employed Almansoori pursuant to and by virtue of his H-1B visa application and concomitant rules and regulations. (Complaint ¶15). Almansoori's H-1B visa application was approved by the USCIS. (Id.; Complaint Exhibit 1).

From on or about October 1, 2018 through his termination on July 15, 2019, Almansoori was employed by AA Medical as an orthopedic surgeon pursuant to the terms of an employment agreement, dated March 18, 2018 (the "Agreement"). (Complaint ¶16; Complaint Exhibit 2). The Agreement formed the basis for AA Medical's sponsorship of Almansoori's H-1B visa application in order for Almansoori to legally enter, remain, and work in the United States. (Complaint ¶17).

It soon became apparent that Almansoori had no intention of truly and meaningfully working for AA Medical and only used AA Medical as part of his fraudulent scheme to unlawfully obtain entry into the United States. (Complaint ¶18). Despite being required to work full-time for AA Medical, Almansoori rarely reported to work. (Complaint ¶19). Almansoori's start date was October 1, 2018, yet Almansoori reported for work only two (2) days in October 2018, nine (9) days in November 2018, and seven (7) days in December 2018. (Complaint ¶20).

Almansoori routinely returned to Canada and refused to work for AA Medical even when present in the United States. (Complaint ¶21). When Almansoori did work for AA Medical, he performed his job and duties as an orthopedic surgeon in an extremely poor, unskilled, and

unprofessional manner. (Complaint ¶22). Almansoori did the least amount of work possible, while taking advantage of AA Medical's monetary advances and benefits. (Complaint ¶23).

Patient reports of complications from surgeries performed by Almansoori were significant and when he was in the office, he was openly hostile to AA Medical's principal, other doctors, and staff, while sometimes in view and within ear-shot of AA Medical's patients. (Complaint ¶¶24-25).

Almansoori openly threatened to continue to take advantage of AA Medical's visa sponsorship and threatened to destroy AA Medical's practice. (Complaint ¶¶26, 28). Almansoori was unstable and had temper issues, which threatened patient care and caused uneasiness in the office. Almansoori would routinely shout and bang doors and other objects in the office. (Complaint ¶27).

Almansoori willfully failed to follow hospital regulations, which jeopardized patients and caused Plaintiff shame and embarrassment, damaging its reputation. (Complaint ¶29). By way of example, per the regulations of Mather Hospital, AA Medical's principal, Dr. Karkare, was required to "scrub-in" with Almansoori for his first ten surgeries at that institution. One patient was prepped, ready for surgery and anesthetized. Almansoori executed the requisite consents to perform the surgery. However, Almansoori then caused a scene and refused to perform the surgery, threatening to walk out of the operating room if Dr. Karkare "scrubbed-in." With the patient already under anesthesia, Dr. Karkare had no choice but to accede and he did not "scrub-in," being constrained to violate the hospital's regulations by Almansoori's unprofessional, hostile and dangerous threats. (Complaint ¶¶30-33).

Pursuant to its terms, the Agreement could be terminated by either side without cause upon 120 days' notice. (Complaint ¶34). Almansoori submitted his 120-day notice of termination to AA Medical in or around February or March 2019, less than five months into the term of his employment. (Complaint ¶35). Notably, Almansoori did not bring his family with him to New York, which indicates he had no intention of truly working for AA Medical for any length of time pursuant to the terms of his H-1B visa and the Agreement. (Complaint ¶36). Prior to giving notice of termination, Almansoori had already been planning to leave AA Medical and submitted applications to other employers. (Complaint ¶37).

Due to Almansoori's poor and unprofessional performance as well as his openly hostile and threatening conduct, AA Medical was forced to terminate Almansoori's employment for cause on or about July 15, 2019. (Complaint ¶38). Upon his termination, Almansoori engaged in threatening and extortive conduct in an attempt to unjustly enrich himself and gain pecuniary and other advantages to terminate the Agreement or negotiate what he deemed to be better terms for himself. (Complaint ¶39).

Among other things, Almansoori demanded (a) that the Agreement be terminated; (b) that the parties sign a non-disparagement agreement; (c) that the parties enter into a new less restrictive non-compete agreement; and/or (d) that the parties enter into a new less restrictive non-solicitation agreement. (Complaint ¶40). If Almansoori's demands in this regard were met, Almansoori stated he would withdraw a lawsuit he commenced against the Plaintiff in New York State Supreme Court, Suffolk County, 615178/2019. (Complaint ¶41). If Almansoori's demands were not met, he threatened to continue to disparage AA Medical and file what would amount to be false whistleblower complaints against AA Medical with various Federal and State authorities and agencies. (Complaint ¶42).

Indeed, as Almansoori's unreasonable demands were not acceded to, he filed a complaint against AA Medical with the U.S. Department of Labor. (Complaint ¶43). AA Medical resolved that matter for $12,500, substantially lower than the amount claimed by Almansoori, without any concession of wrongdoing. (Complaint ¶44). Almansoori received and was enriched by those funds at the expense of AA Medical. (Complaint ¶45).

In addition, on June 9, 2021, AA Medical received notice that Almansoori filed yet another complaint with the U.S. Department of Labor alleging that by AA Medical's filing of suit(s) against Almansoori, AA Medical retaliated against Almansoori for the filing of his initial complaint with the U.S. Department of Labor (Complaint ¶46). Notably, it is Almansoori who first brought the dispute between these parties to litigation by filing his Suffolk County action against AA Medical. (Complaint ¶47). Moreover, within Almansoori's Suffolk County lawsuit against AA Medical, the parties entered into a stipulation for a preliminary injunction whereby AA Medical agreed to the restriction against any enforcement of the Agreement's non-compete clause rather than face the threatened actions of Almansoori and his counsel. (Complaint ¶48).

From at least the time Almansoori submitted his 120-day notice until his termination, Almansoori unlawfully accessed, downloaded and misappropriated confidential patient files from AA Medical's computer system. (Complaint ¶49). These files contained patient names, medical history, surgical procedures, medications, and other personal, sensitive, and confidential data protected by the Health Insurance Portability and Accountability Act ("HIPAA"). (Complaint ¶50). Almansoori used these misappropriated patient files not for any legitimate medical or professional reason but for his own personal gain- - to transmit them to the U.S. Department of Labor, unredacted, solely to aid in his efforts to file improper complaints against AA Medical when AA Medical failed to heed to the Almansoori's demands and threats. (Complaint ¶51).

6

# ARGUMENT

## I.  MOTION STANDARD

### A.    Standard on a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

Relatively recently, the United States Supreme Court has clarified and modified the standard for a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). While Rule 8 does not require "detailed factual allegations," it does require more than an "unadorned, the-defendant-unlawfully-harmed-me accusation". *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint that sets forth mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), *quoting Twombly*, 550 US at 555.

Thus, to survive a motion to dismiss, the complaint must contain sufficient factual matter, which must be accepted as true, that states a claim for relief that is plausible on its face. *Id*. A claim is plausible on its face when the plaintiff pleads facts that allows the Court to draw a reasonable inference that the defendants are liable for the alleged misconduct. *Id., citing Twombly*, 550 US at 556.  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 546.

Notwithstanding this modification of the Rule 12(b)(6) standard, remaining are the long-standing tenets that the Court must accept all of the factual allegations contained in the complaint as true and draw all reasonable inferences in favor of the non-movant. *Chacko v. Worldwide Flight Services, Inc*., 2010 WL 424025 at *1 (E.D.N.Y. 2010). When there are well-pleaded factual allegations, the Court should assume their veracity and then determine whether they plausibly give rise to the plaintiff's entitlement to relief. *Sudler v. City of New York*, 2010 WL 68095 at *5

(S.D.N.Y. 2010). Thus, actions "should not be dismissed at the pleadings stage unless it appears to a certainty that plaintiffs are entitled to no relief under any state of the facts, which could be proved in support of their claims." *Escalera v. N.Y.C. Hous. Auth.,* 425 F.2d 853, 857 (2d Cir. 1970); *see also Branum v. Clark*, 927 F.2d 698 (2d Cir. 1991)(pleading should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of claim which would entitle him to relief)(*internal quotations omitted*).

In the instant matter, AA Medical has more than met this pleading burden. The four corners of the complaint contain much more than mere conclusory allegations or formulaic and boilerplate recitations of the elements of a cause of action. Rather, the Complaint contains sufficiently detailed, specific, plausible, and well-pleaded factual allegations, which plausibly give rise to an entitlement to relief.

**B.      Defendant's Attempt to Summarily Resolve Factual Issues is Wholly Premature and Improper on a Fed. R. Civ. P. 12(b)(6) Motion to Dismiss**

From the outset, it is important to note that Almansoori's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) reads more like a premature motion for summary judgment insofar as Almansoori is attempting to summarily resolve factual issues in his favor at the pleading stage without AA Medical having had the benefit of discovery. Inasmuch as factual challenges are impermissible on a Rule 12(b)(6) motion to dismiss, this is clearly improper and respectfully should not be countenanced. *Carswell v. Air Line Pilots Ass'n., Intern.,* 540 F.Supp. 2d 107, 114 (D.D.C. 2008).

For example, Almansoori asks this Court to resolve factual disputes in his favor with respect to: Almansoori's misrepresentations and motives in requesting AA Medical to sponsor his H-1B visa; whether Almansoori's disinterested malevolence was his sole motive for his unlawful acts; whether AA Medical has suffered special damages; whether Almansoori unlawfully

accessed, downloaded, and misappropriated patient information with ill intent; and the extent of damages suffered by AA Medical by reason of Almansoori's unlawful acts.

All of the foregoing requires a factual inquiry by this Court, which is not appropriate on Almansoori's Rule 12(b)(6) motion. AA Medical should not be punished nor prejudiced for failing to have access to information solely in the custody and control of Almansoori prior to the opportunity to conduct full discovery in this matter. *Elmaghraby v. Ashcroft*, 2005 U.S. Dist. LEXIS 21434 at *68 (E.D.N.Y. 2005), *rev'd in part on other grounds* (plaintiff should not be penalized where "the extent of defendants' involvement is peculiarly within their knowledge").

Thus, Almansoori's premature attempt to summarily resolve factual disputes in his favor at the pleading stage, without the benefit of discovery, is inappropriate and the motion should be denied. *Trustees of Empire State Carpenters Annuity, Apprenticeship, Labor-Management Cooperation, Pension and Welfare Funds v. Dykeman Carpentry, Inc.,* 2014 WL 976822 at *5 (E.D.N.Y. 2014); *Best v. NYC Dept. of Correction*, 14 F.Supp. 3d 341, 349 (S.D.N.Y. 2014); *Bernstein v. Seeman*, 601 F.Supp. 2d 555, 556 (S.D.N.Y. 2009).

## II.  THE PLAINTIFF HAS STATED A CAUSE OF ACTION FOR FRAUD

Under New York law, fraud requires proof of "a material misrepresentation or omission of a fact, knowledge of that fact's falsity, an intent to induce reliance, justifiable reliance by the plaintiff, and damages." *Lenco Diagnostic Laboratories, Inc. v. McKinley Scientific, Inc.,* 2016 WL 8711341 (E.D.N.Y. 2016)(citing *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553, 559 (2009)). To withstand a Rule 12(b)(6) challenge, the complaint must allege facts "that plausibly support" these elements. *Id.* (citing *Loreley Financing (Jersey) No. 3 Limited v. Wells Fargo Securities, LLC,* 797 F.3d 160, 170 (2d Cir. 2015) (internal citations omitted)).

Almansoori's assertion that AA Medical "has failed to allege *even a single instance* of a fraudulent statement by [] Almansoori related to his intent to be employed or remain employed by AA Medical" misses the mark, and is also demonstrably false. (Def. Memo P. 7).

Almansoori entirely ignores the genesis of AA Medical's action – i.e. that Almansoori fraudulently induced AA Medical to sponsor his HI-B Visa, and that entry into the Agreement was part and parcel of that fraudulent scheme. Almansoori also ignores the very real and specific factual allegations pleaded with respect to his unlawful actions. The Complaint goes into great detail how Almansoori used AA Medical as an improper means to sponsor his H-1B visa in order to obtain entry into the U.S. without having any intention of truly and meaningfully remaining in the United States or working for the Plaintiff[3].

That Complaint alleges, with specificity, that:

- Almansoori "fraudulently induced the Plaintiff to sponsor his H1-B visa . . . only to use the Plaintiff as part of [his] fraudulent scheme to obtain entry into the United States." (Complaint ¶ 2);

- "[Almansoori] committed fraud by intentionally misrepresenting his true intentions in his H1-B visa application in order to induce Plaintiff's sponsorship and in entering into the Agreement with Plaintiff". (Complaint ¶ 56);

- "Plaintiff reasonably relied on the Defendant's representations when it agreed to sponsor him for an H-1B visa and hire him as part and parcel of that sponsorship". (Complaint ¶ 58);

- "It became apparent that [Almansoori] had no intention to truly and meaningfully work for the Plaintiff and only used the Plaintiff as part of his fraudulent scheme to unlawfully obtain entry into the United States". (Complaint ¶ 18);

- "[Almansoori] rarely reported to work", "refused to work", and "when he did work . . . [he] performed his job and duties . . . in an extremely poor, unskilled and unprofessional manner". (Complaint ¶ 19-22);

---

[3] In New York, the "State 30" program allows physicians to obtain H1-B visa status without meeting the foreign residency requirement if the applicable practices medicine on a full-time basis in a federally designated underserved area, or provides medical services to persons who live in such areas. The "State 30" program requires an applicant to practice medicine for a minimum of three years at the proposed practice site.

- Almansoori openly threatened to continue to take advantage of the Plaintiff's visa sponsorship. (Complaint ¶ 26);

- Almansoori gave notice that he was leaving the employ of the Plaintiff less than five months in the term of his ten-year employment. (Complaint ¶ 35);

- Almansoori never brought his family with him to New York, which is indicative that he had no intention of staying with Plaintiff and only used Plaintiff to manipulate the visa process. (Complaint ¶ 36);

- "Had Plaintiff known the representations so made and Defendant's intentions to be false, it would not have sponsored the Plaintiff's H1-B visa application and hire him as an orthopedic surgeon". (Complaint ¶ 59);

- Almansoori also made false statements to USCIS about AA Medical causing AA Medical to be "inhibit[ed] from participating in the program and obtaining qualified employees/medical professionals from outside the country". (Complaint ¶ 61);

- As result of Almansoori's fraudulent misrepresentations, and his exploitation of the immigration policies of the United States Government, AA Medical suffered damages by reason of its sponsorship of Almansoori, and by reason of AA Medical's inability to obtain future qualified employees/medical professionals from outside the country. (Complaint ¶ 60-63).

As such, AA Medical's claim for fraud has been sufficiently pleaded under Rule 9(b).

Further, contrary to Almansoori's argument, AA Medical's fraud claim does not merely sound in breach of contract. Almansoori's failure to perform under the parties' Agreement does not serve as the basis for the fraud claim here – the fraud claim is premised upon Almansoori's scheme to dupe AA Medical into being a sponsor of his H-1B visa and never intending to work for AA Medical at all.

In contrast, the breach of contract action between these parties (pending in Suffolk County [Index No. 92/2021]) alleges Almansoori's *failure to perform* thereunder by: failing and refusing to submit to AA Medical lists of procedures performed, patients seen and services rendered; failing and refusing to cooperate with AA Medical's compliance activities, including training; failing to complete medical records; failing and refusing to complete timesheets; refusing to execute certain

11

documents necessary for AA Medical to receive compensation and reimbursement from hospitals and managed care facilities; failing to reimburse AA Medical for advanced liability insurance premiums; and failing to reimburse AA Medical his sign on bonus of $75,000 as required by the agreement.[4] None of these breaches form the basis for the fraud claim in this action.

It is well-settled under New York state law that "if a promise was made with a preconceived and undisclosed intention of not performing it, it constitutes a misrepresentation of a 'material existing fact.'" *Sabo v. Delman*, 3 N.Y.2d 155 (1957); *see also Channel Master Corp. v. Aluminum Ltd. Sales, Inc.,* 4 N.Y.2d 403, 407 (1958) ("a statement of present intention is deemed a statement of a material existing fact, sufficient to support a fraud action."); *Graubard, Mollen, Dannett & Horowitz v. Moskovitz,* 86 N.Y.2d 112 (1995)(false statement of intention is sufficient to support action for fraud even where that statement relates to agreement between the parties); *Deerfield Commc'ns Corp. v. Chesebrough-Ponds, Inc.,* 68 N.Y.2d 954, 956 (1986).

"[I]t is precisely such a misrepresentation which can serve as the basis for a claim of fraud". *International Cabletel Inc. v. Le Group Videotron LTEE,* 978 F.Supp. 483 (S.D.N.Y. 1997)(citing *Sudul v. Computer Outsourcing Services,* 768 F.Supp. 59 (S.D.N.Y. 1994)("a contracting party can be held liable for fraud when, at the time he made a promise, he did not intend to keep it.")).

Indeed, "[a] false statement of intention is sufficient to support an action for fraud, even where that statement relates to an agreement between the parties". *Graubard Mollen Dannett & Horowitz v. Moskovitz,* 86 N.Y.2d 112 (1995)(citing *Deerfield Communications Corp. v. Chesebrough–Ponds, Inc.*, 68 N.Y.2d 954, 956; *Channel Master Corp. v. Aluminium Ltd. Sales,* 4 N.Y.2d 403, 406–407; *Sabo v. Delman*, 3 N.Y.2d 155, 160; Prosser and Keeton, Torts § 109, at 763 [5th ed]).

---

[4] The Suffolk County action also alleged breaches of the non-solicitation agreement and non-compete agreement.

Where a plaintiff alleges that it was induced to enter into a transaction because a defendant misrepresented material facts, the plaintiff has stated a claim for fraud even though the same circumstances also give rise to the plaintiff's breach of contract claim. *First Bank of Americas v. Motor Car Funding, Inc.,* 257 A.D.2d 287 (1ˢᵗ Dept. 1999) (citing *RKB Enterprises Inc. v. Ernst & Young*, 182 A.D.2d 971, 972–73 (3ʳᵈ Dept. 1992)). Unlike a misrepresentation of future intent to perform, a misrepresentation of present facts is collateral to the contract (though it may have induced the plaintiff to sign the contract) and therefore involves a separate breach of duty. *Id.* (citing *Deerfield Communications Corp. v. Chesebrough–Ponds, Inc.*, 68 N.Y.2d 954, 956).

The Court of Appeals for the Second Circuit has explained that to maintain a claim for fraud in these circumstances, "a plaintiff must either: (i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.*, 98 F.3d 13, 20 (2d Cir.1996) (internal citations omitted).

Here, AA Medical meets *all three* independent requirements. First, Almansoori had a duty separate and apart from the Agreement to act legally and honestly in pursuit of his H-1B visa application, for which Almansoori asked AA Medical to be his sponsor. *See* 18 U.S.C. § 1546.

Second, Almansoori alleges fraudulent misrepresentations collateral or extraneous to the contract. The Complaint plausibly alleges that Almansoori misrepresented his intent to stay in the United States, and remain employed with AA Medical, in order to convince and entice AA Medical to sponsor his visa, and in reliance thereon, ultimately enter into an employment agreement. *See, e.g., Wild Bunch, SA v. Vendian Entertainment, LLC*, 256 F.Supp.3d 497 (S.D.N.Y. 2017) (false statements about party's ability to perform, made in order to induce party to enter into contract,

will support claim of fraudulent inducement; such statements are not promissory statements of what will be done in the future, but instead are misrepresentations of present fact); *101 McMurral LLC v. Porter,* 2012 WL 997001 (S.D.N.Y.). AA Medical pleads additional misrepresentations in complaints made to USCIS. (Complaint ¶ 61). These representations cannot be characterized merely as an insincere promise of future performance.

Finally, Almansoori alleges special damages that were caused by the misrepresentations and unrecoverable as contract damages. Said damages are not duplicative of the contract damages, which arise from Almansoori's actual failure to perform under the Agreement itself. AA Medical suffered specific and measurable losses and special damages by having to pay the U.S. Department of Labor to resolve Almansoori's complaint as well as counsel fees to deal with that complaint and the recently filed retaliation complaint. (Complaint ¶ 75). AA Medical also suffered damages by the negative impact Almansoori's actions bore upon AA Medical's ability to participate in the H-1B visa program, thus losing the opportunity to obtain qualified employees/medical professionals from outside the country. (Complaint ¶ 61). In addition, Plaintiff was constrained to accede to Almansoori's continual threats by sacrificing the non-compete clause which was an integral part of the Agreement and formed an essential part of the basis for hiring the Defendant in the first instance under the false pretenses described in the Complaint (Complaint ¶ 76).

The Complaint contains ample factual allegations supporting AA Medical's argument that the non-contractual claims are based on specific factual misrepresentations distinct from the State Court breach of contract claim. These allegations go well beyond Almansoori's agreement to perform duties under the Agreement itself. The allegations are not duplicative of a breach claim for failure to perform. *See Karsch v. Blink Health Ltd.,* 291 F.Supp.3d 503 (S.D.N.Y. 2018).

Almansoori improperly relies on the case of *Hermant Patel M.D., P.C. v. Bandikatala, M.D.* (and others) in support of his argument that the fraud claim is a dressed up breach of contract claim. *See Hermant Patel M.D., P.C. v. Bandikatala, M.D.,* 2019 WL 6619344 (S.D.N.Y. 2019). While *Hermant Patel* is factually similar in that the plaintiff was also a medical practice, which alleged fraud (and other claims) against its employee, a foreign national whom the medical practice sponsored for an H-1B visa, the similarity ends there. The plaintiff's agreement in *Hermant Patel* specifically referenced procurement of the H-1B visa, and specifically tied the period of employment to three years, i.e. the minimum employment period under said visa. *Id.* Further, the only fraud alleged in *Hermant Patel* was that the employee falsely represented that she would be employed for the contracted for three year period (which also formed the basis of the surviving contract claim).

In the agreement *sub judice,* there is no such reference to procurement of the H-1B visa, nor any three year contingency, set forth in the employment agreement. The fraudulent representations made to AA Medical by Almansoori were outside the parties' Agreement, and pertained to Almansoori's intent in having AA Medical sponsor him in procurement of the H-1B visa, and then, in ultimately employing him. Indeed, Almansoori had no intent to work at all, having shown up for only two days in October, 2018, nine days in November, 2018, and seven days in December, 2018. (Complaint ¶ 20).  In contrast, the breach of contract action between these parties (pending Suffolk County [Index No. 92/2021]) alleges Almansoori's *failure to perform* under the agreement as fully described above.

AA Medical has sufficiently pleaded a cause of action for fraud in this case, being based in large part on allegations that it was induced to enter in the employment agreement based upon: a legal duty separate from the duty to perform under the contract; fraudulent misrepresentations

collateral or extraneous to the contract; and seek special damages that were caused by the misrepresentations and unrecoverable as contract damages.

### III.  THE PLAINTIFF HAS STATED A CAUSE OF ACTION FOR PRIMA FACIE TORT

The elements of a cause of action for prima facie tort are (1) intentional infliction of harm; (2) resulting in special damages; (3) without excuse or justification; and (4) by an act or series of acts that would otherwise be lawful. *Nationwide Tarps, Inc. v. Midwest Canvas Corp.,* 228 F.Supp.2d 202 (N.D.N.Y. 2002)(citing *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 332 (1983)). "There is no recovery in prima facie tort unless malevolence is the sole motive of defendant's otherwise lawful act, or in Justice Holmes' characteristically colorful language, unless defendant acts from 'disinterested malevolence.'" *Id.* (quoting *American Bank & Trust Co. v. Federal Bank*, 256 U.S. 350, 358 (1921)).

Almansoori argues that AA Medical has failed to state a cause of action for prima facie tort because (1) the Complaint fails to allege "disinterested malevolence" and (ii) the Complaint fails to allege special damages. Almansoori's argument fails entirely because both elements are explicitly stated in the Complaint.

Almansoori's assertion that the Complaint fails to allege disinterested malevolence is patently false. The Complaint specifically alleges that Almansoori was "motivated by malice or disinterested malevolence" and that when AA Medical did not accede to Almansoori's unreasonable demands, Almansoori made threats to disparage and destroy the business. (Complaint ¶ 42-43, 46, 65). Indeed, Almansoori followed through with his threats by filing false whistleblower complaints. (Complaint ¶ 69, 70, 72). It is further alleged that Almansoori's acts "intentionally inflicted harm upon [AA Medical] and its medical practice without excuse or justification". (Complaint ¶ 74). Whether AA Medical can ultimately prove that Almansoori's

16

disinterested malevolence was his "sole" motivation is not an appropriate inquiry for summary disposition. *Id.; McSpadden v. Caron,* 2004 U.S. Dist. LEXIS 28673 (W.D.N.Y.).

Contrary to Almansoori's assertion, the Complaint also sufficiently pleads special damages. The Complaint states: "Plaintiff suffered specific and measurable losses and special damages by having pay the U.S. Department of Labor to resolve [Almansoori's] complaint as well as counsel fees to deal with that complaint and the recently filed retaliation complaint". (Complaint ¶ 75). In addition, the Plaintiff "was constrained to accede to [Almansoori's] continual threats by sacrificing the non-compete clause . . . which was an integral part of the Agreement and formed an essential part of the basis for hiring the Defendant in the first instance under the false pretenses described [in the Complaint]" thus resulting an additional compensatory damages (Complaint ¶ 76). Further, AA Medical suffered damages by now being prohibited from participating in the H-1B visa program, thus losing the opportunity to obtain qualified employees/medical professionals from outside the country. (Complaint ¶ 61). Finally, AA Medical, as the sponsoring employer for Almansoori, supported Almansoori's application for the H1-B visa by executing and filing all necessary documents, complying with the New York State Department of Health and other matters attendant to the application process. Those actions cost AA Medical both time and money.

Whether AA Medical can ultimately prove its special damages is not an appropriate inquiry on Almansoori's 12(b)(6) motion. At the motion to dismiss stage, the issue "'is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.'" *In re Initial Pub. Offering Sec. Litig.,* 241 F.Supp.2d 281 (S.D.N.Y. 2003)(citing *Phelps v. Kapnolas,* 308 F.3d 180, 184-85 (2d Cir. 2002). The task of the court in ruling on a Rule 12(b)(6) motion is "'merely to assess the legal feasibility of the complaint,

not to assay the weight of the evidence which might be offered in support thereof.'" *Id.* (citing *Pierce v. Marano*, 2002 WL 1858772, at *3 (S.D.N.Y. Aug. 13, 2002)).

Finally, Almansoori's argument that AA Medical's prima facie tort claim is pleaded in an attempt to circumvent the requirements of a malicious prosecution clam, misses the mark. Almansoori's acts, which resulted in special damages to AA Medical, do not arise solely from Almansoori's Department of Labor claim. Further, unlike the cases cited by Almansoori, AA Medical has not pleaded a malicious prosecution claim here and accordingly, the prima facie tort claim cannot be deemed duplicative. *Colina v. One E. River Place Realty Co.,* 2000 U.S. Dist. LEXIS 11728, at *20 (S.D.N.Y. 2000) (prima facie tort claim dismissed as duplicative where claim repeated all same facts as malicious prosecution, abuse of process, and intentional infliction of emotional distress claims); *Eavzan v. Polo Ralph Lauren Corp.,* 40 F.Supp.2d 147 (S.D.N.Y. 1998) (prima facie tort claim was attempt to circumvent legally insufficient malicious prosecution claim); *Church of Scientology v. Siegelman,* 94 F.R.D. 735 (S.D.N.Y. 1982) (same).

## IV.  THE PLAINTIFF HAS STATED A CAUSE OF ACTION FOR A VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT

AA Medical's Computer Fraud and Abuse Act claim is likewise sufficiently pleaded. The Complaint alleges that Almansoori unlawfully accessed, downloaded, and misappropriated sensitive and confidential patient files from AA Medical's computer system without authorization, or in excess of authorized access he had been afforded, for purposes in contravention of the wishes and interests of his employer, AA Medical, all in violation of the Computer Fraud and Abuse Act (Complaint ¶¶80-89).

Almansoori's assertion that these claims are based upon conjecture is meritless. It is alleged that Almansoori not only improperly accessed this information but actually disseminated it to third-parties, including the Department of Labor. (Complaint ¶ 85). There is nothing "speculative" or "conclusory" about these allegations.

Nor can Almansoori hide behind the fact that he accessed the information while he was employed. Section (a)(4) provides a claim against whoever, "knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value...." 18 U.S.C. § 1030(a)(4).

Almansoori's access exceeded his granted authorization. "[T]he plain language of the statute seems to contemplate that . . . "without access" and "exceeds authorized access" would include an employee who is accessing documents on a computer system which that employee had to know was in contravention of the wishes and interests of his employer." *Calyon v. Mixuho Securities USA, Inc.,* 2007 WL 2618658 (S.D.N.Y.). Even where an employee has broad access to the computer system, where that access exceeds the employee's authority, a violation of the CFAA is committed. The access is "rendered unauthorized *ab initio* by virtue of the fact that prior to entry [the employee] knows that the [information] obtained will be later used for an unauthorized purpose". *Register.com, Inc. v. Verio, Inc.,* 126 F.Supp.2d 238 (S.D.N.Y. 2000).

Almansoori did not have authorization to access AA Medical's proprietary and confidential patient records for use in pursuit of his personal claims against AA Medical. *Id.* Further, AA Medical's claim need only be plausible to be considered not futile. *Jung v. Chorus Music Studio, Inc.,* 2014 U.S. Dist. LEXIS 128103 (S.D.N.Y.) (CFAA claim based upon employee's access of computer information during employment survived dismissal). Finally, by reason that the

employment agreement had a broad confidentiality clause, Almansoori's access was unauthorized under the agreement, irrespective of the statutory meaning of "unauthorized access" under the CFAA. Indeed, pursuant to Paragraph 7(j) of the Agreement, Almansoori was prohibited from (without written consent of AA Medical and the patient) copying any patient files. (Complaint Ex. 2).

Next, defendant contends that plaintiff has not alleged its loss with sufficient particularity. Suggesting that the CFAA imposes some sort of heightened pleading standard, defendant cites several cases where courts "have dismissed CFAA claims for failing to sufficiently quantify damages." *See, e.g., Law Firm of Omar T. Mohammedi, LLC v. Comput. Assisted Prac. Elec. Mgmt. Sols.,* 2019 WL 3288390, at *7 (S.D.N.Y. 2019) (collecting cases).

These cases are inapposite. In some, the complaints were vague and conclusory merely alleging the statutory definition for the loss. *Turret Labs USA, Inc. v. CargoSprint, LLC,* 2021 U.S. Dist. LEXIS 27838, at *20 (E.D.N.Y.); *Deutsch v. Human Res. Mgmt.,* 2020 U.S. Dist. LEXIS 65926, at *11 (S.D.N.Y.). In another, the plaintiff failed to assert personal economic loss under the CFAA (*Bose v. Interclick, Inc.,* 2011 U.S. Dist. LEXIS 93633 (S.D.N.Y.)). In the final case, the determination was whether plaintiff was entitled to a preliminary injunction, i.e. a likelihood of success on his claims, not simply whether the complaint was sufficiently pleaded. *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393 (2d Cir. 2004).

Contrary to defendant's assumption, none of these cases suggest that the CFAA imposes a heightened pleading standard for damages. Plus, this case is distinguishable because plaintiff has connected its expenses to a recognized form of loss under the CFAA, as plaintiff specifically alleged that Almansoori's actions "caused damage to [AA Medical's] protected computer by impairing the integrity of [AA Medical's] protected computer network resulting in substantial

20

annual loss to AA Medical" (Complaint ¶ 87), as well as the financial fallout from Almansoori's HIPAA breaches.

## V.  THE PLAINTIFF HAS STATED A CAUSE OF ACTION FOR UNJUST ENRICHMENT

Plaintiff's unjust enrichment claim is also sufficiently pleaded. Under New York law, for a plaintiff to prevail on a claim of unjust enrichment, he must plead (1) that the defendant was enriched; (2) that the enrichment was at the plaintiff's expense; and (3) that the circumstances are such that in equity and good conscience the defendant should return the money or property to the plaintiff. *Golden Pac. Bancorp v. FDIC,* 273 F.3d 509 (2d Cir. 2001)(citing *Universal City Studios, Inc. v. Nintendo Co*., 797 F.2d 70, 79 (2d Cir. 1986)(applying New York law); *State v. Barclays Bank*, 76 N.Y.2d 533 (1990)).

The Complaint sufficiently alleges that Almansoori "has been directly and unjustly enriched, at Plaintiff's expense, by the wrongful retention of Plaintiff's payments, advances, bonuses and benefits based upon the false representations as set forth [in the Complaint]" and that Almansoori's "retention of these payments and benefits violates the fundamental principles of fairness, justice, equity and good conscience". (Complaint ¶ 96, 98). Thus, AA Medical has alleged all necessary elements of a claim for unjust enrichment.

Further, to the extent that heightened pleading is required, Almansoori's misrepresentations by which he was enriched have been sufficiently pleaded with specificity as discussed above; and AA Medial has alleged that it was "justifiably induced to sponsor Defendant's H-1B visa and enter into the Agreement based upon [Almansoori's] fraudulent misrepresentations and intentions" and "justifiabl[y] reli[ed]" thereon. (Complaint ¶ 94, 95).

Nor does AA Medical's unjust enrichment claim sound in contract. While the employment agreement covers Almansoori's failure to perform thereunder, it does not allow for complete recovery of all monies wrongfully retained by Almansoori. *ADYB Engineered for Life, Inc. v. Edam Admin. Servs.,* 2021 U.S. Dist. LEXIS 59666 (S.D.N.Y); *Key Bank N.A. v. Quality Payroll Sys.,* 2007 U.S. Dist. LEXIS 118327 (E.D.N.Y).

## VI.     PLAINTIFF'S CLAIMS ARE NOT PREMISED ON STATEMENTS PROTECTED BY LITIGATION PRIVILEGE

Almansoori's arguments that AA Medical's claims are premised on statements protected by litigation privilege has no merit. Each of the cases cited by Almansoori merely hold that defamation claims are precluded for statements subject to the litigation privilege. *See Office Max Inc. v. Cinotti,* 966 F.Supp.2d 74 (E.D.N.Y 2013); *Aquetron Med., Inc. v. Dyro,* 999 F.Supp. 294 (E.D.N.Y. 1998); *Bernstein v. Seeman,* 593 F.Supp.2d 630 (S.D.N.Y. 2009).  AA Medical pleads no defamation claims in this action. Rather, any reference in the Complaint to Almansoori's statements to others is merely factual background for his other claims.

## VII.  THIS ACTION SHOULD NOT BE DISMISSED DUE TO A PRIOR PENDING ACTION

Almansoori's final argument that this action be dismissed under the prior pending action doctrine or the *Colorado River* abstention doctrine is also meritless. The "First Action" was filed by Almansoori, himself, against AA Medical, in State Court, and alleges breaches of the employment agreement as well as declaratory and injunctive relief pertaining to the non-compete clause. The "Second Action" filed by AA Medical against Almansoori, also in State Court, arises from his breach of performance under the employment agreement.

"[A] plaintiff has 'no right to maintain two actions on the same subject in the same court, against the same defendant at the same time.' In order for the rule to be properly invoked, however, 'the case must be the same.'" *Sacerdote v. Cammack Larhette Advisors, LLC*, 939 F.3d 498, 504 (2d Cir. 2019) (first quoting *Curtis v. Citibank, N.A.*, 226 F.3d 133, 139 (2d Cir. 2000), and then quoting *The Haytian Republic,* 154 U.S. 118, 124, 14 S. Ct. 992, 38 L. Ed. 930 (1894)).

It is well-settled that the application of the "prior action pending" or "other suit pending" doctrine requires that there be "the same rights asserted and the same relief prayed for" and the relief "must be founded upon the same facts." *Haytian Republic,* 154 U.S. 118, 123-24, 14 S. Ct. 992, 38 L. Ed. 930 (1894). As such, the rule against duplicative litigation may only be invoked when the cases "are the same". *Sacerdote v. Cammack Larhette Advisors, LLC,* 939 F.3d 498, Fn. 29 (2d Cir. 2019).

To start with, the other action commenced by AA Medical is in a different court – State Supreme Court. Further, the instant action is separate and distinct from the State court actions as it arises from a different set of facts and makes separate and distinct claims. The main basis of the Supreme Court actions (both Almansoori's and AA Medical's) is the parties' non-compete and non-solicitation agreements (and breach thereof), and Almansoori's failure to perform under the employment agreement by: failing and refusing to submit to AA Medical lists of procedures performed, patients seen and services rendered; failing and refusing to cooperate with AA Medical's compliance activities, including training; failing to complete medical records; failing and refusing to complete timesheets; refusing to execute certain documents necessary for AA Medical to receive compensation and reimbursement from hospitals and managed care facilities; failing to reimburse AA Medical for advances liability insurance premiums; and failing to

reimburse AA Medical his sign on bonus of $75,000 as required by the agreement. None of these breaches form the basis of the claims in this action.

Certainly, at this stage of the litigation, on a motion to dismiss, the instant action should not be dismissed as duplicative. *Capone v. Goldman,* 2010 U.S. Dist. LEXIS 165642 (E.D.N.Y.); *CVD Equip. Corp. v. PrecisionFlow Techs., Inc.,* 2007 U.S. Dist. LEXIS 21717 (N.D.N.Y.).

## <u>CONCLUSION</u>

For the foregoing reasons, AA Medical respectfully requests that the Court deny Almansoori's motion in its entirety.

Dated: Merrick, New York
         October 15, 2021

LAW OFFICES OF
DAVID A. ANTWORK, P.C.

By:      *David A. Antwork*

DAVID A. ANTWORK
1757 Merrick Avenue, Suite 207
Merrick, New York 11566
T: (516) 757-5634
F: (516) 746-2611
*Attorneys for Plaintiff*

24