```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
AA MEDICAL P.C.,

                    Plaintiff,                MEMORANDUM
                                              DECISION AND ORDER
                                              20-CV-03852 (DG) (JMW)
         -against-

KHALED ALMANSOORI,

                    Defendant.
----------------------------------------------------------------X
```

**WICKS,** Magistrate Judge:

Plaintiff AA Medical P.C., an orthopedic treatment and surgical provider, commenced this action against Defendant Khaled Almansoori, a Canadian national and orthopedic surgeon, alleging claims of fraud, *prima facie* tort, unjust enrichment, and a violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §§ 1030 *et seq.* Plaintiff alleges that Defendant defrauded Plaintiff by luring it into an employment agreement as a means of obtaining an H-1B visa. Plaintiff further alleges that Defendant engaged in threatening, extortive, and disparaging conduct as the employment relationship deteriorated, all while misappropriating confidential patient files from Plaintiff's computer system.

Currently pending before the Honorable Diane Gujarati is Defendant's motion to dismiss. (DE 44.) Defendant has also moved this Court to stay discovery pending the resolution of that motion. (DE 36.) Plaintiff opposes Defendant's motion to stay and seeks to move forward with discovery. (DE 39.) For the following reasons, Defendant's motion to stay discovery is GRANTED.

## BACKGROUND

The following allegations are drawn from Plaintiff's amended complaint and are presumed true for the purposes of the present motion. Plaintiff is an orthopedic treatment and surgical

provider. (DE 24 ¶ 9.) Defendant is a Canadian national and works as a physician and orthopedic surgeon. (*Id.* ¶¶ 11–12.) In February 2018, Defendant applied to work for Plaintiff as an orthopedic surgeon and requested that Plaintiff sponsor him for a H-1B visa. (*Id.* ¶ 14.) Plaintiff interviewed Defendant and subsequently offered him a full-time position as an orthopedic surgeon and agreed to act as his sponsor. (*Id.* ¶¶14–15.) From October 1, 2018 until July 15, 2019, Plaintiff employed Defendant as an orthopedic surgeon pursuant to an employment agreement entered into by the parties. (*Id.* ¶ 16.) The employment agreement could be terminated without cause only with one hundred- and twenty-days' notice. (*Id.* ¶ 34.)

Plaintiff alleges that, at some point after Defendant began his employment, "[i]t . . . became apparent that . . . Defendant had no intention of truly and meaningfully working for . . . Plaintiff and only used . . . Plaintiff as part of his fraudulent scheme to unlawfully obtain entry into the United States." (*Id.* ¶ 18.) Plaintiff alleges that Defendant rarely reported to work and, when he did, performed his duties in an extremely poor, unskilled, and unprofessional manner. (*Id.* ¶¶ 19, 22.) Moreover, Defendant was allegedly "openly hostile to . . . Plaintiff's principal, other doctors[,] and staff," "openly threatened that he would destroy Plaintiff's practice," and "failed to follow hospital regulations which jeopardized patients and caused Plaintiff shame and embarrassment." (*Id.* ¶¶ 25, 28–29.)

Approximately five months into the term of his employment, Defendant submitted his notice of termination. (*Id.* ¶ 35.) Plaintiff alleges that Defendant "had already been planning to leave Plaintiff and submitted application to other employers" prior to providing his notice, and that Defendant "had no intention of truly working for . . . Plaintiff for any length of time pursuant to the terms of his H-1B visa and the" employment agreement. (*Id.* ¶¶ 36–37.) After giving his notice, Defendant allegedly "accessed, downloaded[,] and misappropriated sensitive and

confidential patient files from Plaintiff's computer system" which "contained patient names, medical histor[ies], surgical procedures, medications[,] and other personal, sensitive and confidential data protected by [HIPPA]." (*Id.* ¶ 81–82.) Plaintiff alleges that Defendant accessed these files "knowing that it was for purposes in contravention of the wishes and interest of . . . Plaintiff." (*Id.* ¶ 84.)

On July 15, 2019, presumably prior to the expiration of Defendant's notice period, Plaintiff terminated Defendant for cause based on his "poor and unprofessional performance as well as his openly hostile and threatening conduct." (*Id.* ¶ 38.) After his for-cause termination, Defendant demanded that the employment agreement be terminated, the parties sign a non-disparagement agreement, and that the parties enter into new, less restrictive non-compete and non-solicitation agreements. (*Id.* ¶¶ 39–40.) Plaintiff alleges that Defendant "threated to continue to disparage Plaintiff and file what would amount to be false whistleblower complaints against . . . Plaintiff" if his demands were not met. (*Id.* ¶ 42.) Because Plaintiff did not accede to Defendant's demands, Defendant filed a complaint against Plaintiff with the United States Department of Labor, a case which Plaintiff subsequently settled with no concession of wrongdoing. (*Id.* ¶¶ 43–44.)

Plaintiff commenced this action by filing a complaint on August 21, 2020. (DE 1.) Plaintiff then filed an amended complaint—the now-operative complaint—on June 14, 2021, (DE 24), after the Honorable Diane Gujarati consolidated this matter with two other related actions (DE 21). Judge Gujarati then set a briefing schedule for Defendant's anticipated motion to dismiss (Electronic Order dated Aug. 3, 2021), prompting Defendant to file the present motion for a stay of discovery pending the outcome of his motion to dismiss (DE 36). Plaintiff opposes the stay motion and wishes to proceed with discovery.

3

## **LEGAL STANDARD**

Staying litigation seems antithetical to Rule 1's admonition to construe the rules so as to "secure the just, speedy . . . determination of every action". Fed. R. Civ. P. 1. However, often there are times when delaying discovery in fact satisfies Rule 1's other command to secure an "inexpensive determination of every action and proceeding." *Id.* As a result, courts are empowered to stay or suspend proceedings, which "'is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Thomas v. N.Y.C. Dep't of Educ.*, No. 09-CV-5167 (SLT), 2010 WL 3709923, at *2 (E.D.N.Y. Sept. 14, 2010) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). The filing of a dispositive motion in and of itself does not halt discovery obligations. That is, a stay of discovery is not warranted, without more, by the mere pendency of a dispositive motion. *Weitzner v. Sciton, Inc.*, No. CV 2005-2533 (SLT) (MDG), 2006 WL 3827422, at *1 (E.D.N.Y. Dec. 27, 2006). Rather, the moving party must make a showing of "good cause" to warrant a stay of discovery. *Chesney v. Valley Stream Union Free Sch. Dist. No. 24*, 236 F.R.D. 113, 115 (E.D.N.Y. 2006). In evaluating whether a stay of discovery pending resolution of a motion to dismiss is appropriate, courts typically consider: "(1) whether the defendant has made a strong showing that the plaintiff's claim is unmeritorious; (2) the breadth of discovery and the burden of responding to it; and (3) the risk of unfair prejudice to the party opposing the stay." *Id.* (citation omitted). "Courts also may take into consideration the nature and complexity of the action, whether some or all of the defendants have joined in the request for a stay, and the posture or stage of the litigation." *Id.* (citation omitted).

## **DISCUSSION**

Defendant, relying on the arguments set forth in its pre-motion to dismiss letter, contends that a stay is warranted because each of Plaintiff's causes of action are insufficiently pled in the amended complaint and should therefore be dismissed. Specifically, Defendant posits that

4

Plaintiff's fraud claim must be dismissed because Plaintiff failed to allege any fraudulent statements with particularity and, in any event, Plaintiff's claim sounds in breach of contract rather than fraud. As to Plaintiff's *prima facie* tort claim, Defendant asserts that Plaintiff fails to allege that the sole motivation for his actions was disinterested malevolence and fails to sufficiently allege special damages, both of which are fatal to his claim. Defendant then argues that Plaintiff's CFAA claim also fails because Plaintiff does not allege that Defendant accessed a protected computer without authorization and does not adequately plead any alleged damage or loss. Finally, Defendant maintains that Plaintiff's unjust enrichment claim must fail because it is premised on fraudulent misrepresentations which have not been pled with sufficient particularity, and that, in any event, the claim sounds in breach of contract. The Court discusses each of Defendant's arguments in turn.[1]

**Fraud**

Defendant's argument regarding the pitfalls of Plaintiff's fraud claim appears to have merit. Under New York law, the elements of a fraud claim are (1) a material misrepresentation or omission of fact; (2) made by defendant with knowledge of its falsity; (3) intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff. *MetLife Invs. USA Ins. Co. v. Zeidman*, 734 F. Supp. 2d 304, 312 (E.D.N.Y. 2010) (citing *Crigger v. Fahnestock & Co., Inc.*, 443 F.3d 230, 234 (2d Cir. 2006)). To survive a motion to dismiss under Federal Rule of Civil Procedure 9(b)'s heightened pleading standard for fraud claims, a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent[;] (2) identify the speaker[;] (3) state where and when the statements were made[;] and (4) explain why the

---

[1] To be clear, the Court is not in any way prejudging the anticipated motion to dismiss—which is before Judge Gujarati—but is merely considering its plausibility based upon the submitted papers for purposes of weighing whether a stay should be granted.

statements were fraudulent." *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004) (citation omitted).

The alleged misrepresentation that Plaintiff grounds its fraud claim in is Defendant's application for the orthopedic surgeon position. Plaintiff alleges that "Defendant contacted the Plaintiff to apply for a position as an orthopedic surgeon requesting that the Plaintiff sponsor him for an H-1B visa," and that Plaintiff agreed to hire Defendant for the position and to sponsor his H-1B visa. (DE 24 ¶¶ 13–14.) These allegations appear to fall short of meeting Rule 9(b)'s heightened pleading standard. Plaintiff does not point to any specific fraudulent statement made by Defendant. To the contrary, a reasonable reading of Plaintiff's allegations is that Defendant made clear that he desired to work for Plaintiff to obtain an H-1B visa. As such, Defendant's arguments as to Plaintiff's fraud cause of action appear to have some merit, weighing in favor of imposing the stay.

### *Prima Facie Tort*

Defendant's argument that Plaintiff's *prima facie* tort claim will fail likewise seems to hold water. To succeed on a *prima facie* tort claim in New York, a plaintiff must show (1) intentional infliction of harm; (2) causing special damages; (3) without excuse or justification; (4) by an act or series of acts that would otherwise be lawful. *Katz v. Travelers*, 241 F. Supp. 3d 397, 405 (E.D.N.Y. 2017). The first element requires "disinterested malevolence," meaning that a plaintiff must go above showing that the defendant's conduct was harmful, but rather was done with the sole intent to harm. *Id.* (quoting *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 304 (S.D.N.Y. 2002)). The existence of motives other than disinterested malevolence—such as profit, self-interest, or business advantage—will undermine a *prima facie* tort claim. *Id.* (quoting *Twin Lab'ys., Inc. v. Weider Health & Fitness*, 900 F.2d 566, 571 (2d Cir. 1990)).

The allegations in the amended complaint appear contrary to the assertion that Defendant acted with disinterested malevolence. Indeed, Plaintiff alleges that Defendant "engaged in threatening and extortive conduct *in an attempt to unjustly enrich himself and gain pecuniary and other advantages*." (DE 24 ¶ 65 (emphasis added).) Based on Plaintiff's own allegations, it appears that Defendant did not merely harbor the intent to harm alone, but rather intended on acting in his own self-interest for pecuniary gain. If so, Plaintiff's own allegations are fatal to its *prima facie* tort cause of action. As above, Defendant's arguments in favor of dismissal read as meritorious, again weighing in favor of the stay.

### *CFAA Claim*

Defendant's contentions concerning the perceived lack of merit of Plaintiff's CFAA claim are also persuasive. "The CFAA, in relevant part, provides a federal cause of action against a person who 'intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information from any protected computer." *Jet One Grp., Inc. v. Halycon Jet Holdings, Inc.*, No. 08-CV-3980, 2009 WL 2524864, at *5 (E.D.N.Y. 2009) (quoting 18 U.S.C. § 1030(a)(2)). Courts have interpreted the "accesses without authorization" and "exceeds authorized access" language narrowly to prevent the "creat[ion] [of] a federal cause of action for incidents and injuries traditionally governed by state contract and tort laws." *JBCHolding NY, LLC v. Pakter*, 931 F. Supp. 2d 514, 525 (S.D.N.Y. 2013) (citation omitted). As such, where, as here, a plaintiff alleges that a defendant merely misappropriated information that he or she otherwise had access to, any CFAA claim should fail. *See Associated Mortg. Bankers, Inc. v. Calcon Mut. Mortg. LLC*, 159 F. Supp. 3d 324, 335 (E.D.N.Y. 2016) (dismissing CFAA claim where allegations in complaint focused on defendants' misappropriation of data rather than

whether defendant inappropriately accessed a computer or exceeded their authority in accessing the data).

As an orthopedic surgeon employed by Plaintiff, Defendant likely had access to Plaintiff's computer systems and its patients' medical records. The amended complaint in conclusory fashion states repeatedly that Defendant accessed, downloaded and misappropriated the Plaintiff's protected computer and electronic medical records without authorization or in excess of authorized access. (DE 24 ¶¶ 50–51, 84.) What it does not do is allege any distinction between the systems that Defendant was authorized to access and those that he was not. At this juncture, Defendant appears to have a legitimate argument that Plaintiff's CFAA claim should be dismissed. This, too, weighs in favor of imposing a stay.

*Unjust Enrichment*

In the event that the fraud claim is dismissed based on a lack of specificity, Plaintiff's unjust enrichment claim will likely fail for the same reason. Indeed, the unjust enrichment claim appears to be duplicative of the fraud claim, and therefore may well be dismissed for that reason alone. *Spinnato v. Unity of Omaha Life Ins. Co.*, 322 F. Supp. 3d 377, 404 (E.D.N.Y. 2018) (dismissing unjust enrichment claim premised on same facts as fraud claim). This is because "[u]njust enrichment is available as a cause of action only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 483 (S.D.N.Y. 2014) (internal quotation marks and citation omitted). Accordingly, the unjust enrichment claim, as Defendant asserts, may be dismissed as duplicative of the fraud claim, weighing in favor of the imposition of the stay.

\* \* \*

In sum, Defendant has made a strong showing that the claims subject to the Rule 12(b)(6) motion may be unmeritorious. Although the likely breadth of discovery in this case strikes as unremarkable—thus weighing neither in favor nor against the imposition of a stay—the Court concludes that Plaintiff will not be prejudiced by a stay of discovery pending the resolution of the motion to dismiss. Accordingly, Defendant's motion to stay discovery is granted.

## **CONCLUSION**

For the foregoing reasons, Defendant's motion is granted, and discovery is stayed pending the resolution of Defendant's motion to dismiss. The stay of discovery will remain in effect until Defendant's motion to dismiss is either denied or is granted with leave to replead. In the latter scenario, Defendant is granted leave to renew his application for a stay following the filing of a second amended complaint if one is permitted.

Dated:   Central Islip, New York
         March 3, 2022

S O   O R D E R E D:

/s/ *James M. Wicks*
    JAMES M. WICKS
United States Magistrate Judge