UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------- X

AA MEDICAL P.C.,

                Plaintiff,

       -against-

KHALED ALMANSOORI, M.D.,

                Defendants.

-------------------------------------------------------------------------- X

Case No.: 2:20-cv-03852 (DG) (JMW) (DG)(JMW)

VERIFIED **SECOND AMENDED COMPLAINT**

**Jury Trial Demanded**

Plaintiff, AA MEDICAL P.C., by and through its attorneys, the Law Offices of David A. Antwork, P.C.Milman Labuda Law Group PLLC, complaining of the Defendant KHALED ALMANSOORI, M.D., as and for its Verified Second Amended Complaint[1] hereby alleges as follows upon information and belief:

## NATURE OF THE ACTION

1.    The Plaintiff brings this action seeking monetary damages and injunctive relief arising out of the wrongful actions of the Defendants with respect to the Plaintiff, including violation of the Defend Trade Secrets Act of 2016 ("DTSA"), fraud, *prima facie* tort, violations of the Computer Fraud and Abuse Act and unjust enrichment.

> **Formatted:** Font: Italic

2.    As set forth herein below, the Defendant, an orthopedic surgeon, defrauded the Plaintiff, his former employer, by fraudulently inducing the Plaintiff to sponsor his H-1B visa with no intention of truly and meaningfully working for the Plaintiff, only to use the Plaintiff as part of Defendant's fraudulent scheme to obtain entry into the United States.

3.    Upon his termination, the Defendant attempted to extort the Plaintiff and threatened to file various false whistleblower complaints to state and federal agencies if certain of

---

[1] Pursuant to this Court's May 7, 2021 Order (ECF Doc. No. 21), this matter (20-cv-03852) has been consolidated with 20-cv-04350 and 20-cv-04413.

his demands to reform his ~~employment~~ agreement with Plaintiff to his advantage were not met and vowed to destroy the Plaintiff's medical practice.

## PARTIES

4.      At all times hereinafter mentioned, Plaintiff AA MEDICAL P.C. (hereinafter referred to as "Plaintiff"), is a domestic professional corporation, duly organized and existing under the laws of the State of New York with a principal place of business located in the State of New York, County of Suffolk.

5.      Upon information and belief, at all times hereinafter mentioned, Defendant KHALED ALMANSOORI, M.D. (hereinafter referred to as "Defendant"), is an individual, who resides at 615 The Lane, Hinsdale, IL 60521.

## JURISDICTION AND VENUE

6.      Jurisdiction in this Court is proper pursuant to 28 U.S.C. §1332 as complete diversity exists between the parties. The Plaintiff maintains is business in the State of New York and the Defendant is a Canadian national who resides in the State of Illinois. The amount in controversy exceeds the jurisdictional limit of $75,000.00.

7.      Furthermore, the Defendant has availed himself of the jurisdiction of this Court by removing two of the actions consolidated herein (20-cv-04350; 20-cv-04413) from New York State Supreme Court, County of Suffolk to this Court on diversity grounds pursuant to 28 U.S.C. §§ 1332, 1441.

8.      Venue in the Eastern District of New York is proper pursuant to 28 U.S.C. §1391(b) inasmuch as the events that gave rise to the Plaintiff's claims took place within the Eastern District of New York.

2

**FACTS**

9.     The Plaintiff maintains orthopedic treatment and surgical offices within the State of New York with a main office located in Stony Brook, New York.

10.    Dr. Nakul Karkare, M.D. is the president/owner of the Plaintiff.

11.    Upon information and belief, the Defendant is a physician/orthopedic surgeon.

12.    Upon information and belief, the Defendant is a Canadian national who maintains both a Canadian passport as well as one from the United Arab Emirates.

13.    In February 2018, the Defendant contacted the Plaintiff to apply for a position as an orthopedic surgeon requesting that the Plaintiff sponsor him for an H-1B visa.

14.    Plaintiff interviewed Defendant in March 2018 and offered the Defendant a full-time position as an orthopedic surgeon in Plaintiff's New York offices and agreed to sponsor his H-1B visa in this regard and under these pretenses.

15.    The Plaintiff successfully sponsored the Defendant for his H-1B visa for specialty occupations until 2021 and employed the Defendant pursuant to and by virtue of his H-1B visa application and concomitant rules and regulations, which was approved by the Department of Homeland Security-United States Citizenship and Immigration Services ("USCIS").

16.    As such, from on or about October 1, 2018 through his termination on July 15, 2019, the Defendant was employed by the Plaintiff as an orthopedic surgeon pursuant to the terms of an ~~employment~~ agreement, dated March 18, 2018 (the "Agreement").

17.    The Agreement formed the basis for the Plaintiff's sponsorship of Defendant's H-1B visa application in order for the Defendant to legally enter, remain and work in the United States.

3

18. It soon became apparent that the Defendant had no intention of truly and meaningfully working for the Plaintiff and only used the Plaintiff as part of his fraudulent scheme to unlawfully obtain entry into the United States.

19. Despite being required to work full-time for the Plaintiff, the Defendant rarely reported to work.

20. In fact, Defendant's start date was October 1, 2018, yet the Defendant reported for work only two (2) days in October 2018, nine (9) days in November 2018 and seven (7) days in December 2018.

21. Despite this, Defendant continued to receive advances and compensation, all while he was misappropriating medical records, confidential information, and trade secrets of AA Medical, and was done long before Defendant complained about his compensation.

22. In addition, Tthe Defendant routinely returned to Canada and refused to work for the Plaintiff even when present in the United States.

23. When he did work for the Plaintiff, the Defendant performed his job and duties as an orthopedic surgeon in an extremely poor, unskilled and unprofessional manner.

24. The Defendant did the least amount of work possible, while taking advantage of the Plaintiff's monetary advances and benefits, including those proffered under the H-1B visa.

25. What's worse, Patient patient reports of complications from surgeries performed by the Defendant were significant.

26. From the very beginning and throughout his employment, Defendant sought to misappropriate AA Medical's confidential information.

27. Defendant's wrongful actions of misappropriating AA Medical's confidential and proprietary information – including but not limited to patient medical records and financial

4

information – were made in furtherance of his goal and ambition of opening a competing practice.

28.     Defendant misappropriated the medical records and other documents early on in in his employment, well before he made any complaint in court or before an administrative agency.

29.     Indeed, the medical records Defendant misappropriated related to patients he had never even seen, some of which are several years old, and many of which were before he was hired by AA Medical.

30.     Rather than do so in a legitimate manner, Defendant sought to utilize AA Medical's confidential and proprietary information as a springboard to assist him with opening a competing practice.

31.     Defendant's wrongful actions also amounted to a fraud upon Plaintiff, in that Defendant, while purporting to act on Plaintiffs behalf, was intentionally acting adversely to Plaintiff.

32.     Moreover, during the limited time he spent When in the office, the Defendant was openly hostile to the Plaintiff's principal, other doctors, and staff – sometimes in view and within ear-shot of Plaintiff's patients.

33.     Indeed, Defendant openly threatened to continue to take advantage of the Plaintiff's visa sponsorship.

34.     Defendant had temper issues which threatened patient care and caused uneasiness in the office. He would routinely shout and bang doors and other objects in the office.

35.     Defendant was unstable and openly threatened that he would destroy Plaintiff's practice.

36.     Defendant willfully failed to follow hospital regulations which jeopardized patients and caused Plaintiff shame and embarrassment, damaging its reputation.

30.     For example, per the regulations of Mather Hospital, Plaintiff's principal, Dr. Karkare, was required to "scrub-in" with the Defendant for his first ten surgeries at that institution.

31.     A patient was prepped, ready for surgery and anesthetized. The Defendant executed the requisite consents to perform the surgery.

32.     However, the Defendant caused a scene and refused to perform the surgery, threatening to walk out of the operating room, if Dr. Karkare "scrubbed-in."

33.     With the patient already under anesthesia, Dr. Karkare had no choice but to accede and he did not "scrub-in," constrained to violate the hospital's regulations by the Defendant's unprofessional, hostile and dangerous threats.

34.     This act by Defendant was done with disinterested malevolence in that there was no basis for his conduct other than to harm Plaintiff and its principal.

35.     Further, Defendant interfered with AA Medical's relationships with patients and St. Joseph's Hospital by, and including, (i) inducing patients to not seek medical treatment from AA Medical, and instead other medical providers; and (ii) intentionally failing to comply with St. Joseph's Hospital's requirements in order to maintain a relationship with them for the sole purpose of damaging AA Medical's relationship with St. Joseph's Hospital.

36.     Motivated by his desire to harm AA Medical, and in order to cause AA Medical to be denied certain contractual relationships with St. Joseph's Hospital, Defendant breached

the obligations that he was required to uphold in order to service AA Medical's St. Joseph's Hospital such that the competing business Defendant planned to open would be able to compete against AA Medical unfairly.  This is another act of disinterested malevolence.

37.     Pursuant to its terms, the Agreement could be terminated by either side without cause upon 120 days' notice.[2]

38.     Defendant submitted his 120-day notice of termination to Plaintiff in or around February or Marchon April 3, 2019, less than five eight (8) months into the term of his employment, and effectively resigned despite agreeing to work for ten (10) years.

39.     Notably, the Defendant did not bring his family with him to New York which indicates that he had no intention of truly working for the Plaintiff for any length of time pursuant to the terms of his H-1B visa and the Agreement, further establishing that he intended on defrauding AA Medical by entering into the employment agreement solely to obtain a visa.

40.     Upon information and belief, prior to giving notice of termination, the Defendant had already been planning to leave Plaintiff and submitted applications to other employers.

41.     Due to the Defendant's poor and unprofessional performance as well as his openly hostile and threatening conduct, the Plaintiff was forced to terminate Defendant's employment for cause on or about July 15, 2019, just two (2) weeks shy of his notice of his termination due to Defendant's unsustainable and indefensible behavior, which made running a medical practice impossible.

---

[2] The Agreement's restrictive covenants would survive termination.

39.    Upon his termination, the Defendant engaged in threatening and extortive conduct in an attempt to unjustly enrich himself and gain pecuniary and other advantages to terminate the Agreement or negotiate what he deemed to be better terms for himself.

40.    Among other things, the Defendant demanded (a) that the Agreement be terminated; (b) that the parties sign a non-disparagement agreement; (c) that the parties enter into a new less restrictive non-compete agreement; and/or (d) that the parties enter into a new less restrictive non-solicitation agreement.

41.    If Defendant's demands in this regard were met, Defendant stated he would withdraw a lawsuit he commenced against the Plaintiff in New York State Supreme Court, Suffolk County, 615178/2019.

42.    If the Defendant's demands were not met, he threatened to continue to disparage Plaintiff and file what would amount to be false whistleblower complaints against the Plaintiff with various Federal and State authorities and agencies.

43.    Indeed, as the Defendant's demands were not met, he filed a complaint against the Plaintiff with the U.nited States. Department of Labor ("USDOL").

44.    Plaintiff resolved that matter for $12,500.00, substantially lower than the amount claimed by Defendant, without a concession of wrongdoing and no finding of any liability.

45.    Upon information and belief, the Defendant received and was enriched by those funds at the expense of Plaintiff.

46.    In addition, on June 9, 2021, just prior to the filing of this amended complaint, the Plaintiff received notice that the Defendant filed another complaint with the U.S. Department of OLabor that the Plaintiff retaliated against the Defendant for the filing of his initial complaint with the U.S. Department of LaborUSDOL by filing lawsuits against the Defendant.

8

47.     Notably, it is the Defendant who first brought the dispute between these parties to litigation by filing his Suffolk County action against the Plaintiff.

48.     Moreover, within the Defendant's Suffolk County lawsuit against the Plaintiff, the Plaintiff entered into a stipulation for a preliminary injunction preventing the enforcement of the Agreement's non-compete clause rather than face the threatened actions of the Defendant.

49.     From at least the time the Defendant submitted his 120-day notice until his termination, the Defendant unlawfully accessed, downloaded and misappropriated confidential patient files from Plaintiff's computer system.

50.     These files contained patient names, medical history, surgical procedures, medications and other personal, sensitive and confidential data protected by the Health Insurance Portability and Accountability Act ("HIPAA").  As such, patient privacy is also at stake here, and the medical records and other documentation must be returned to AA Medical.

50.51. To be sure, Defendant, in pursuance of his claims made to the U.S. Department of Labor, provided a printout that contained a list of Plaintiff's patients names. This printout contained a file address in the "C drive" of the Defendant's personal device. Providing clear indicia of personal possession of Plaintiff's confidential and privileged information.

51.52. The Defendant used these misappropriated patient files not for any legitimate medical or professional reason but for his own personal gain, i.e., to open a competing practice.

52.53. Defendant also later utilized the medical records inappropriately by submitting them to the USDOL.  However, the medical records had absolutely nothing to do with his complaint, and Defendant misappropriated medical records and other trade secrets long before any complaint concerning non-payment with respect to payroll and/or wages that he complained about before the USDOL.  to transmit them to the U.S. Department of Labor, unredacted, solely to aid

9

~~in his efforts to file improper complaints against the Plaintiff due to Plaintiff's failure to heed to the Defendant's demands and threats as aforesaid~~.

~~53.~~54. Moreover, Defendant continues to hold on to AA Medical's patient medical records and other confidential information of AA Medical long after all complaints with the USDOL have been resolved and has no basis or right to keep any such records or confidential information.

~~54.~~55. Indeed, the USDOL complaint was filed some time in or about August 13, 2019, but the medical records and other confidential information were misappropriated by Defendant sometime in or about October 2018, long before the filing of the complaint.

~~55.~~56. In addition, the USDOL complaint covered periods of time for April, May, June, and July of 2019, while virtually all of the medical records Defendant misappropriated were not from this period of time.

~~56.~~57. Defendant also provided a printout that contained a list of Plaintiff's patients names. This printout contained a file address in the "C drive" of the Defendant's personal device, which is clear *indicia* of his personal possession of Plaintiff's confidential and privileged information.[3]

~~57.~~58. Defendant has shown a reckless disregard for the law and for patients of AA Medical by failing to redact any of the records that he improperly utilized.

~~58.~~59. The job Defendant currently maintains in Illinois is available to him solely on account of AA Medical's action in sponsoring an H-1B visa for Defendant, which was obtained by Defendant under false pretenses.

---

[3] For example, the information provided contains a folder path in each file along the lines of the following:
file:///C:/Users/kalma/Desktop/Khaleds%20Documents/Docs/My%20Documents/Work/U...
This is evidence of Defendant's improper possession of AA Medical's medical records.

10

**AS AND FOR A FIRST CAUSE OF ACTION FOR VIOLATION OF
DEFEND TRADE SECRETS ACT OF 2016, 18 U.S.C. 1836**

60.    Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs "1" through "51" inclusive, as if more fully set forth herein.

59. 61. Defendant's actions, as set forth herein, constitute misappropriation under the DTSA, 18 U.S.C. §1836. Defendants possess trade secrets and confidential information belonging to Plaintiff, including the identity of all of its patients, their contact information, and all details related to patients, including *inter alia*, their medical history.

62.    Defendant maliciously and willfully misappropriated the trade secrets and confidential information belonging to AA Medical.

63.    AA Medical made and makes reasonable efforts to maintain the secrecy of this information including limiting its disclosure to essential personnel only.

64.    AA Medical treats patients from various states, including but not limited to, New York and California.

65.    Defendant is prohibited by law from improperly obtaining patient files, trade secrets and confidential information belonging to Plaintiff.

66.    The trade secret information and patient files belonging to Plaintiff that Defendant possesses derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

67.    Defendant knew the information and files taken from Plaintiff contained trade secrets belonging to AA Medical.

68.    Defendant utilized this information for personal gain, and did so in direct violation of Section 9(a) of the parties Employment Agreement.

11

69.     Defendant has no right to retain or use any of AA Medical's trade secrets or other confidential and proprietary information due to their illegal conduct.

70.     Upon information and belief, defendants are retaining and using that information to compete with AA Medical.

71.     AA Medical did not consent to Defendant's use of the information as set forth above.

72.     Defendant wrongfully acquired and used Plaintiff's trade secrets and continue to do so, without the express or implied consent of Plaintiff, for Defendants' own benefit and the benefit of others.

73.     The public policy in favor of protecting Plaintiff's interest in maintaining its trade secrets and protecting medical patients' confidential information outweighs any interest Defendants could have in using Plaintiffs' trade secrets.

60.74. As a direct and proximate result of Defendants' misappropriation of Plaintiff's trade secrets, Plaintiff has suffered and continues to suffer immediate and irreparable injury, loss, harm or damage including, without limitation, the misappropriation of its trade secrets and loss of goodwill with its patients, and will continue to suffer said injury, loss, harm or damage unless and until Defendants are restrained from their continued misappropriation of trade secrets, as Plaintiff is under an obligation to maintain patient files in its practice and Defendant's misconduct could subject Plaintiff to liability.

**AS AND FOR A SECOND CAUSE OF ACTION FOR INJUNCTIVE RELIEF**
**UNDER THE DTSA (18 U.S.C. 1836, *et seq.*)**

75.     AA Medical repeats, reiterates and realleges each and every allegation contained in Paragraphs "1" through "64" inclusive, as if more fully set forth herein.

76.     As set forth above, Defendant improperly acquired Plaintiff's trade secrets, including information regarding Plaintiff's business, operations, services, patients and other confidential business and/or financial information that was secret, valuable in the medical industry, and had not been disclosed to anyone outside Plaintiff's practice except Khaleed Almansoori.

77.     The aforementioned documents qualify as "trade secrets" under the DTSA, as defined in 18 U.S.C. §1839(3). The misappropriated documents concerned Plaintiff's operations, services, and confidential patient information.

61. 78.     Furthermore, Plaintiff has taken reasonable measures to keep such information secret by, among other things, limiting the accessibility of highly sensitive information.

79.     AA Medical treats patients from various states, including but not limited to, New York and California.

80.     The trade secrets misappropriated by Defendants include the trade secrets which required substantial resources, time and investment by Plaintiff to create and/or develop and derive independent economic value from not being generally known to, or readily ascertainably by, those who can obtain economic value from use of this information, such as Plaintiff's competitors.

81.     Defendant's misappropriation of Plaintiff's trade secrets has caused it to suffer harm, including but not limited to the loss of Plaintiff's reputation.

82.     It this harm cannot be adequately remedied at law and requires permanent injunctive relief. Plaintiff will suffer irreparable and imminent harm in the absence of a permanent injunction; Defendant's continued misappropriation of Plaintiff's trade secrets and failure to return Plaintiff's documents containing Trade Secrets, including Plaintiff's patients' medical files, will cause Plaintiff further loss of patients, accounts and/or market share.

13

83.     This imminent injury is neither remote nor speculative, because Plaintiff has already been harmed in precisely this manner by Defendant's misappropriation and use thereof and will continue to be irreparably harmed in the absence of a permanent injunction.

84.     Defendant will not suffer harm from the rightful return of Plaintiff's proprietary information and trade secrets and will not be prevented from conducting their ordinary business.

85.     Defendant will merely be prevented from continuing to gain an unfair and unlawful advantage at Plaintiff's expense. The ongoing, continuing, and future harm to Plaintiff cannot be adequately remedied at law and requires permanent injunctive relief.

62.86.   The public interest would not be disserved by the issuance of an injunction preventing Defendant from misappropriating Plaintiff's Trade Secrets.

63.87.   Accordingly, Plaintiff is entitled to an injunction, pursuant to 18 U.S.C. §1836(b)(3)(A), enjoining Defendants from continuing to use Plaintiff's trade secrets, in order to prevent continued actual and threatened misappropriation of Plaintiff's trade secrets, and requiring Defendant to return and/or destroy the trade secrets improperly accessed and retained by Defendant, pursuant to 18 U.S.C. §1836(b)(3)(A)(ii).

**AS AND FOR A THIRDFIRST CAUSE OF ACTION FOR FRAUD**

64.88. Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs "1" through "51" inclusive, as if more fully set forth herein.

65.89. As set forth hereinabove, the Defendant affirmatively contacted the Plaintiff to apply for an orthopedic surgeon position with the intention of having the Plaintiff sponsor his H-1B visa application.

66.90. It was always Defendant's intention to use Plaintiff as an improper means to sponsor his H-1B visa in order to obtain entry into the United States without having any intention

of truly and meaningfully working for the Plaintiff pursuant to the terms of his H-1B visa and the Agreement.

83.     This is evidenced by, *inter alia*, the Defendant's failure to report to work for the majority of the time immediately after his employment with the Plaintiff began, and thereafter, and giving notice that he was leaving the Plaintiff less than five months from his start date.

84.     Defendant committed fraud by intentionally misrepresenting his true intentions in his H-1B visa application in order to induce Plaintiff's sponsorship and in entering the Agreement with Plaintiff.

85.     Defendant's actions in this regard constitute a fraud upon the Plaintiff as well as the United States Government.

86.     The Plaintiff reasonably relied on the Defendant's representations when it agreed to sponsor him for an H-1B visa and hire him as part and parcel of that sponsorship.

87.     Had Plaintiff known the representations so made and Defendant's intentions to be false, it would not have sponsored the Plaintiff's H-1B visa application and hire him as an orthopedic surgeon.

88.     Because the Defendant never truly intended to meaningfully work for the Plaintiff, only using Plaintiff as a means to obtain certain immigration status, the Plaintiff suffered damages due to Defendant's failures to report for work and his poor, hostile and unprofessional performance on the occasions when he did work, as set forth hereinabove.

89.     In addition, upon information and belief, the Defendant complained to USCIS falsely stating that the Plaintiff was not a good employer and the agency should not permit any other visas to be sponsored by the Plaintiff which inhibits Plaintiff from participating in the program and obtaining qualified employees/medical professionals from outside of the country.

15

90.     As a direct and proximate result of the actions alleged herein, Plaintiff has suffered compensatory damages in an amount to be proven at trial, but expected to be not less than one million ($1,000,000.00) plus interest, costs, expenses and attorney's fees, in addition to lost opportunities because Defendant rendered Plaintiff unable to sponsor any other medical professionals for H-1B visas, including many such professionals who sought to apply for H-1B visas by and through Plaintiff's practice.

91.     In light of the Defendant's exploitation of the immigration policies of the United States Government and his fraudulent use of the Plaintiff solely as a means to sponsor his visa without any intentions of truly and meaningfully working for the Plaintiff, an award of punitive damages is warranted.

**AS AND FOR A FOURTHSECOND CAUSE OF ACTION FOR *PRIMA FACIE* TORT**

92.     Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs "1" through "63" inclusive, as if more fully set forth herein.

93.     As set forth hereinabove, the Defendant, motivated by malice or disinterested malevolence, engaged in threatening and extortive conduct in an attempt to unjustly enrich himself and gain pecuniary and other advantages to terminate the Agreement or negotiate what he deemed to be better terms for himself.

94.     Defendant publicly vowed to destroy Plaintiff's medical practice.

95.     Among other things, the Defendant demanded (a) that the Agreement be terminated; (b) that the parties sign a non-disparagement agreement; (c) that the parties enter into a new less restrictive non-compete agreement; and/or (d) that the parties enter into a new less restrictive non-solicitation agreement.

96.   If Defendant's demands in this regard were met, Defendant stated he would withdraw a lawsuit he commenced against the Plaintiff in New York State Supreme Court, Suffolk County, 615178/2019.

97.   If the Defendant's demands were not met, he threatened to continue to disparage Plaintiff and file what would amount to be false whistleblower complaints against the Plaintiff with various Federal and State authorities and agencies.

97.   Indeed, as the Defendant's demands were not met, he filed a baseless complaint against the Plaintiff with the ~~U.S. Department of Labor~~USDOL.

98.   Plaintiff resolved that matter for $12,500, substantially lower than the amount claimed by Defendant, without a concession of wrongdoing.

99.   In addition, on June 9, 2021, the Plaintiff received notice that the Defendant filed another baseless complaint with the ~~U.S. Department of Labor~~USDOL that the Plaintiff retaliated against the Defendant for the filing of his initial complaint with the ~~U.S. Department of Labor~~USDOL by filing lawsuits against the Defendant. Yet, it was the Defendant who first brought the dispute between these parties to litigation by filing his Suffolk County action against the Plaintiff.  Moreover, the baseless complaint was ultimately dismissed.

100.   Moreover, within the Defendant's Suffolk County lawsuit against the Plaintiff, the Plaintiff entered into a stipulation for a preliminary injunction preventing the enforcement of the Agreement's non-compete clause rather than face the threatened actions of the Defendant.

101.   Defendant's actions as set forth hereinabove intentionally inflicted harm upon the Plaintiff and its medical practice without excuse or justification.

102.   In addition, the Plaintiff was constrained to accede to Defendant's continual threats by sacrificing the non-compete clause of the Agreement which was an integral part of

the Agreement and formed an essential part of the basis for hiring the Defendant in the first instance under the false pretenses described hereinabove.

103.    The series of acts committed by the Defendant as set forth hereinabove would have otherwise been lawful, but for the nefarious and malicious methods employed by the Defendant.

104.    As a direct and proximate result of the actions alleged herein, Plaintiff has suffered compensatory damages in an amount to be proven at trial, but expected to be not less than one million dollars ($1,000,000.00) plus interest, costs, expenses and attorney's fees.

**AS AND FOR A FIFTH~~THIRD~~ CAUSE OF ACTION FOR A VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT (18 U.S.C. §1030)**

105.    Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs "1" through "78" inclusive, as if more fully set forth herein.

106.    Plaintiff's computer system is, and at all relevant times has been, used in interstate commerce and communication and is thus a "protected computer" under the Computer Fraud and Abuse Act.

107.    From the time the Defendant submitted his 120-day notice until his termination, the Defendant unlawfully accessed, downloaded and misappropriated sensitive and confidential patient files from Plaintiff's computer system.

108.    These files contained patient names, medical history, surgical procedures, medications and other personal, sensitive and confidential data protected by the Health Insurance Portability and Accountability Act ("HIPAA").

109.    The Defendant accessed, downloaded and misappropriated the Plaintiff's protected computer and electronic medical records without authorization or in excess of authorized access he had been afforded.

18

110. The Defendant accessed, downloaded and misappropriated the Plaintiff's protected computer knowing that it was for purposes in contravention of the wishes and interests of the Plaintiff, his employer in violation of the Computer Fraud and Abuse Act.

111. The Defendant used these misappropriated patient files not for any legitimate medical or professional reason but for his own personal gain- - to transmit them to the U.S. Department of Labor, unredacted, solely to aid in his efforts to file improper complaints against the Plaintiff due to Plaintiff's failure to heed to the Defendant's demands and threats as aforesaid.

112. Defendant's actions in this regard violated HIPAA privacy laws which subjects Plaintiff to potential liability.

113. In doing so, the Defendant intentionally, and without authorization, caused damage to Plaintiff's protected computer by, *inter alia*, impairing the integrity of Plaintiff's protected computer network resulting in a substantial annual loss to Plaintiff in an amount to be proven at trial, but which exceeds the statutory annual threshold of $5,000 embodied in the Computer Fraud and Abuse Act.

114. The Defendant's access of Plaintiff's protected computer without, or in excess of, authorization was done knowingly and with the intent to wrongfully transmit sensitive and confidential patient information, unredacted, for no legitimate medical purpose, but in contravention of the wishes and interests of the Plaintiff, his employer.

115. Plaintiff has, as a result, suffered injury from the Defendant's violations of the Computer Fraud and Abuse Act that cannot be adequately or fully remedied at law or by the assessment of damages against him.

116. In addition, as a result of the Defendant's violation of the Computer Fraud and Abuse Act, Plaintiff has also suffered compensatory damages in an amount to be proven at trial,

19

but expected to be not less than one million dollars ($1,000,000.00) plus interest, costs, expenses and attorney's fees.

117.    In this regard, the Plaintiff also requests that the Court issue an Order directing the Defendant (a) to cease dissemination or use in any way of the computer data and files he misappropriated from the Plaintiff; (b) to return to the Plaintiff all of Plaintiff's computer data and files in Defendant's possession, custody or control; and (c) to delete and/or destroy any copies of the Plaintiff's computer data and files in Defendant's possession, custody or control.

**AS AND FOR A SIXTH~~FOURTH~~ CAUSE OF ACTION FOR UNJUST ENRICHMENT**

118.    Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs "1" through "91" inclusive, as if more fully set forth herein.

119.    As set forth herein, the Defendant has been unjustly enriched by his fraudulent misrepresentations and other tortious conduct as set forth hereinabove.

120.    The relationship created between the Plaintiff and the Defendant resulted in the Plaintiff's justifiable reliance on the Defendants' fraudulent misrepresentations.

121.    The relationship(s) created between the Plaintiff and the Defendants resulted in the Plaintiff being justifiably induced to sponsor Defendant's H-1B visa and enter into the Agreement based upon the Defendant's fraudulent misrepresentations and intentions.

122.    Specifically, Defendant was unjustly enriched by obtaining a visa at AA Medical's expense as well as wages at its expense while not receiving the benefit of the bargain it reached with Defendant in that Defendant was to perform work for AA Medical in exchange for these benefits.  Rather, Defendant only worked at AA Medical for mere days – a far cry from the ten (10) years he contractually bound himself to perform.

20

123.    The Defendant has been directly and unjustly enriched, at Plaintiff's expense, by the wrongful retention of Plaintiff's payments, advances, bonuses and benefits based upon false representations as set forth herein.

124.    Under such circumstances, it would be inequitable for the Defendant to retain these payments and benefits to the detriment of the Plaintiff.

125.    The Defendant's retention of these payments and benefits violates the fundamental principles of fairness, justice, equity and good conscience.

126.    As a direct and proximate result of the actions alleged herein, Plaintiff has suffered compensatory damages in an amount to be proven at trial, but expected to be not less than one million dollars ($1,000,000.00) plus interest, costs, expenses and attorney's fees.

## JURY DEMAND

127.    Plaintiff hereby demands a trial by jury on all causes of action and counts herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A.    Compensatory damages for misappropriation of AA Medical's goodwill, misappropriation and unfair competition, violation of the Defend Trade Secrets act of 2016, 18 U.S.C. 1836, fraud, unjust enrichment, according to proof at trial, including but not limited to, lost profits, disgorgement of all profits and revenues received by Defendant, and to the extent culpable damages for reputational damage, lost customers, lost relationships, lost revenue, loss of goodwill, corrective advertising, and all other available damages.

B.      Injunctive relief restraining and enjoining Defendant from further violations of the DTSA, including the use of confidential information or trade secrets of Plaintiff, and unfairly competing with Plaintiff in any manner.

C.      On the Second~~First~~ Cause of Action, for compensatory damages in amounts to be proven at trial but expected to be not less than one million dollars ($1,000,000.00), together with interest, costs, expenses, and attorney fees, as well as an award of punitive damages in an amount to be determined at trial;

D.      On the Fourth~~Second~~ Cause of Action, for compensatory damages in amounts to be proven at trial but expected to be not less than one million dollars ($1,000,000.00), together with interest, costs, expenses, and attorney fees;

C.      On the Fifth~~Third~~ Cause of Action, for compensatory damages in amounts to be proven at trial but expected to be not less than one million dollars ($1,000,000.00), together with interest, costs, expenses, and attorney fees; as well as an Order directing the Defendant (a) to cease dissemination or use in any way of the computer data and files he misappropriated from the Plaintiff; (b) to return to the Plaintiff all of Plaintiff's computer data and files in Defendant's possession, custody or control; and (c) to delete and/or destroy any copies of the Plaintiff's computer data and files in Defendant's possession, custody or control.

D.      On the Sixth~~Fourth~~ Cause of Action, for compensatory damages in amounts to be proven at trial but expected to be not less than one million dollars ($1,000,000.00), together with interest, costs, expenses, and attorney fees; and

E.      Granting such other and further relief as to this Court may appear just and appropriate.

Dated: Lake Success, New York
~~April 06~~July 8, 2022

       Respectfully submitted,

       **MILMAN LABUDA LAW GROUP PLLC**

       _____/s_____
       Jamie S. Felsen, Esq.
       Emanuel Kataev, Esq.
       3000 Marcus Avenue, Suite 3W8
       Lake Success, NY 11042-1073
       (516) 328-8899 (office)
       (516) 328-0082 (facsimile)
       jamie@mllaborlaw.com
       emanuel@mllaborlaw.com

23