UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

AA MEDICAL P.C.,

                             Plaintiff,

                         -against-

KHALED ALMANSOORI,

                           Defendant.

------------------------------------------------------------------X

**REPORT AND**
**<u>RECOMMENDATION</u>**

20-cv-03852 (DG) (JMW)

**A P P E A R A N C E S:**

Emanuel Kataev, Esq.
**Milman Labuda Law Group PLLC**
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042
*Attorney for Plaintiff*

Adam I. Kleinberg, Esq.
**Sokoloff Stern LLP**
179 Westbury Avenue
Carle Place, NY 11514
*Attorney for Defendant*

Jordan Call, Esq.
**Benesch Friedlander Coplan & Aronoff**
71 South Wacker, Suite 1600
Chicago, IL 60606
*Attorney for Defendant*

**WICKS,** Magistrate Judge:

Plaintiff, AA Medical P.C., an orthopedic treatment and surgical provider, commenced suit against Defendant, Dr. Khaled Almansoori, an orthopedic surgeon, alleging various claims including fraud, prima facie tort, unjust enrichment, and violations of 18 U.S.C. §§ 1030 *et seq.*, otherwise known as the Computer Fraud and Abuse Act ("CFAA"). Specifically, Plaintiff asserts that Defendant induced Plaintiff into signing an employment agreement with it. However, Defendant subsequently engaged in disparaging conduct and misappropriated confidential patient files, resulting in a deterioration of their professional relationship.

Presently before the Court upon referral from the Honorable Diane Gujarati is Plaintiff's motion to amend (ECF No. 89), in which it seeks to add a claim under the Defend Trade Secrets Act ("DTSA"), and Defendant's cross-motion to dismiss (ECF No. 92). The Court held Oral Argument on May 25, 2023.[1] For the following reasons, the undersigned respectfully recommends that Plaintiff's motion to amend its first amended complaint (ECF No. 89) be DENIED, and Defendant's cross motion to dismiss (ECF No. 92) be GRANTED.

## BACKGROUND

The following facts are drawn from the operative complaint and are presumed true for the purposes of the present motion (ECF No. 24).[2] Plaintiff is a company that maintains its business in New York. (*Id.* ¶ 9.) Defendant, a Canadian national and Illinois resident, was hired by

---

[1] *See generally* Transcript of Oral Argument, *AA Medical P.C. v. Almansoori*, No. 20-cv-03852 (DG) (JMW) (E.D.N.Y. May 25, 2023) (ECF No. 104) ("Oral Argument").

[2] *See Giraud v. Bd. of Educ.*, No. 12-CV-1842 (ER), 2013 U.S. Dist. LEXIS 100670, at *2, n.2 (S.D.N.Y. July 17, 2013) ("As is required on a motion pursuant to Rule 12(b)(6), the factual allegations in the Revised First Amended Complaint, though disputed by Defendant, are assumed as true for purposes of this motion, and all reasonable inferences are drawn therefrom in favor of Plaintiff.") (citing *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010)).

Plaintiff to work as a physician and orthopedic surgeon whereby Plaintiff agreed to sponsor Defendant for a H-1B visa. (*Id*. ¶¶ 11-12, 14-15.) Defendant worked for Plaintiff from October 1, 2018 until July 15, 2019, pursuant to an employment agreement ("Agreement") entered into by the parties. (*Id*. ¶ 16.) The Agreement set out his duties, including that he would provide orthopedic services to the best of his ability and according to applicable standards and that he would fulfill the requisite work hours requirement. (ECF No. 24-2 at 2-4.) The Agreement could be terminated without cause with 120 days' notice. (ECF No. 24 ¶ 34.)

Plaintiff alleges that Defendant fraudulently induced Plaintiff to sponsor Defendant as a United States citizen, but he had no intention of working for Plaintiff and instead created a "fraudulent scheme to unlawfully obtain entry into the United States." (*Id*. ¶¶ 2, 18.) Plaintiff states that Defendant rarely reported to work and when he did, he performed in an "extremely poor, unskilled and unprofessional manner," including being hostile to Plaintiff's personnel and failing to follow hospital protocol which damaged Plaintiff's reputation. (*Id*. ¶¶ 19, 22, 25, 29.)

Approximately five months into his employment, Defendant submitted his 120-day notice of termination. (*Id*. ¶ 35.) Plaintiff alleges that Defendant had already submitted applications to other employers before giving notice to Plaintiff. (*Id*. ¶ 37.) Plaintiff further asserts that upon giving notice of his termination, Defendant "unlawfully accessed, downloaded and misappropriated confidential patient files" from Plaintiff's computer system which contained confidential information including patient names, and medical history. (*Id*. ¶¶ 49-50, 81-82.)

Around July 15, 2019, prior to Defendant's intended end date, Plaintiff fired him based on his "poor and unprofessional performance as well as his openly hostile and threatening conduct." (*Id*. ¶ 38.) Plaintiff states that Defendant demanded that the Agreement be terminated; that the parties sign a non-disparagement agreement; and that they enter a new, less restrictive

non-compete agreement or a new non-solicitation agreement.  (*Id.* ¶ 40.)  If Plaintiff satisfied these demands, Defendant would withdraw a suit that Defendant commenced in Suffolk County Supreme Court.[3]  (*Id.* ¶ 41.)  However, if they were not met, Defendant would continue to disparage Plaintiff and file false whistleblower complaints against the Plaintiff.  (*Id.* ¶ 42.) Plaintiff did not concede to Defendant's demands, so Defendant filed a complaint with the U.S. Department of Labor ("DOL").  (*Id.* ¶ 46.)  Plaintiff states that the DOL case has since been resolved resulting in a $12,500 payment with no concession of wrongdoing.  (*Id.* ¶ 44.)

## PROCEDURAL HISTORY

Plaintiff filed the instant complaint on August 21, 2020.  (ECF No. 1.)  Since then, Plaintiff filed its Amended Complaint on June 14, 2021 (ECF No. 24) after District Judge Gujarati consolidated this matter with two other related matters (ECF No. 21; Electronic Order dated May 11, 2021).  *See AA Medical P.C. v. Almansoori, M.D.*, 20-cv-4350; *AA Medical P.C. v. Almansoori, M.D.,* 20-cv-4413.  Specifically, the Amended Complaint alleges that Defendant committed fraud in inducing Plaintiff to sponsor his H-1B visa without having an intention of working for it; is liable for a prima facie tort motivated by malice or disinterested malevolence because he engaged in disparaging conduct which caused inexcusable harm upon the company; is liable under the CFAA for having knowingly and intentionally misappropriated Plaintiff's patient files causing millions of dollars in damages; and finally, Defendant was unjustly enriched as a result of his tortious conduct.  (ECF No. 24 ¶¶ 54, 65, 74, 90, 93.)

Defendant filed a letter motion for a pre-motion conference outlining its intended motion to dismiss Plaintiff's amended complaint (ECF No. 29).  Judge Gujarati set a briefing schedule

---

[3] This case remains open, as the last activity occurred in March 2023.  Preliminary Conference Order, *Almansoori vs. AA Medical, P.C.*, No. 615178/2019 (Suffolk Cty. Sup. Ct. March 28, 2023) (outlining 12-month discovery schedule to conclude February 2024).

for the motion to dismiss.  (Electronic Order Aug. 3, 2021.)  And on August 17, 2021, the Court

entered a scheduling order whereby the deadline to amend the pleadings was extended to

November 15, 2021.  (ECF No. 34.)

Meanwhile, in a related pending state court action in Suffolk County against Defendant,

Plaintiff sought leave to add, *inter alia*, a claim for common-law trade secret misappropriation

and filed an amended complaint with this claim once leave was granted.  Amended Compl. at 13-

15, *AA Medical, P.C. v. Khaled Almansoori, M.D.*, No. 000092/2021 (Suffolk Cty. Sup. Ct. Sept.

23, 2021), NYSCEF 95.

In this action, Defendant filed its motion to dismiss for failure to state a claim (ECF Nos.

44-49).  In the interim, the Court granted Defendant's request to file a motion to stay discovery

and the motion to stay was filed on September 10, 2021.  (ECF No. 36.)  On March 3, 2022, the

undersigned granted Defendant's motion to stay (ECF No. 59) pending resolution of his motion

to dismiss.

On June 18, 2022, Plaintiff sought leave to amend the pleadings once again.  (ECF No.

62.)  This filing occurred months after Plaintiff's current counsel[4] filed his notice of appearance

and approximately one year after Plaintiff had already filed its amended complaint including the

misappropriation of trade secrets claim in state court.  However, Plaintiff subsequently withdrew

its intention to amend the pleadings at the July 1, 2022 status conference and agreed to provide a

revised pleading to Defendant by July 8, 2022 for consideration whether Defendant would

stipulate to the amendment.  (ECF No. 65.)  A briefing schedule was not adopted right away

since parties had undergone several settlement conferences.  (Electronic Orders dated July 26,

2022, Aug. 23, 2022, Sept. 8, 2022, and Sept. 19, 2022).  However, settlement was unsuccessful

---

[4] Plaintiff's current counsel, Emanuel Kataev, is the fourth attorney to have appeared for Plaintiff.  *See*
ECF Nos. 16, 53, 55; *see also* Electronic Orders dated Mar. 26, 2021, Dec. 7, 2021, and Jan. 28, 2022.

so the undersigned entered a briefing schedule for the instant motions. (Electronic Order dated Apr. 28, 2023.)

Plaintiff and Defendant filed their respective motions to amend and to dismiss on May 8, 2023 (ECF Nos. 89 and 92), which were referred to the undersigned by Judge Gujarati for a report and recommendation. (*See* Electronic Order dated May 9, 2023.) Oral argument was heard on both motions on May 25, 2023.[5]

In its motion to amend, Plaintiff requests that the Court grant leave to amend the first complaint under the "liberal standard" afforded by the Federal Rules. Specifically, Plaintiff seeks to add a claim under the DTSA, a law enacted in 2016, which Plaintiff's prior counsel had not attempted to assert. (ECF No. 90 at 6.) Plaintiff further claims that there is no undue delay, prejudice or bad faith in seeking to amend the Complaint again because no discovery has been conducted in this case and therefore parties would not expend additional resources to conduct discovery for this new claim. (*Id.* at 6-7; ECF No. 95 at 19.) And Plaintiff states the newly added claim would not be futile, as it would be able to satisfy the DTSA's requirements by showing the Defendant misappropriated patient files and financial records. (ECF No. 90 at 11.)

Defendant, however, strenuously opposes, asking the Court to deny Plaintiff's belated motion for leave to amend since Plaintiff was well aware of the facts underlying the so-called new DTSA claim long ago. (ECF No. 94 at 12.) However, if the Plaintiff's motion for leave to amend the first complaint is granted, Defendant requests that the court dismiss the *entire* action for failure to state a claim upon which relief can be granted. (*Id.* at 37.)

---

[5] Immediately following oral argument, Plaintiff submitted a motion for leave to file supplemental authority and a letter from Dr. Karkare in support of its motion to amend and opposition to the motion to dismiss. (ECF Nos. 100 and 101.) Both motions were denied (ECF No. 103) and the undersigned did not consider them for purposes of this Report and Recommendation.

As for the motion to dismiss, Defendant posits that Plaintiff's DTSA claim must be dismissed because Plaintiff fails to properly plead the elements and is protected by relevant statutory immunity provisions.  (*Id.* at 13-14.)  Secondly, Plaintiff's fraud claim fails to allege fraudulent statements with any degree of particularity and, in any event, Plaintiff's claim is founded in breach of contract rather than fraud.  (*Id.* at 23-25.)  As to Plaintiff's *prima facie* tort claim, Defendant asserts that Plaintiff fails to allege that the sole motivation for his actions was disinterested malevolence and fails to sufficiently allege special damages, both of which are fatal to his claim.  (*Id.* at 26-28.)  Defendant then argues that Plaintiff's CFAA claim also fails because Plaintiff does not allege that Defendant accessed a protected computer without authorization and does not adequately plead any alleged damage or loss.  (*Id.* at 29-32.)  Finally, Defendant maintains that Plaintiff's unjust enrichment claim must fail because it is premised on fraudulent misrepresentations which have not been pled with sufficient particularity, and that, in any event, the claim sounds in breach of contract.  (*Id.* at 33-34.)

Separately, Defendant asserts that Plaintiff's claims infringe upon Defendant's litigation privilege which extend to the settlement discussions with the DOL and other documents prior to and throughout the course of the litigation. (*Id.* at 34-35.)  And finally, the lawsuit should be dismissed based on the prior pending action doctrine due to the nearly identical claims filed in state court.  (*Id.* at 35-37.)

Plaintiff counters, arguing that it has sufficiently pled a claim under the DTSA, fraud, *prima facie* tort, CFAA, and unjust enrichment.  (ECF No. 95 at 8.)  It also posits that the litigation privilege does not apply here, as the allegations go beyond the context of quasi-judicial proceedings before the DOL and consists of conduct throughout Defendant's employment with Plaintiff and before DOL proceedings.  (*Id.* at 9.)  And finally, it argues that the state court action

is "not parallel or duplicative and is based on completely different facts" than those alleged in the instant federal action and the court should therefore decline to abstain.  (*Id.* at 10, 27.)

## DISCUSSION

### *LEAVE TO AMEND*

Motions to amend pleadings are governed by the Federal Rule of Civil Procedure 15(a). Pursuant to Fed. R. Civ. P. 15(a)(2), "[t]he court should freely give leave when justice so requires."  Generally, "[u]nless there is a showing of bad faith, undue delay, futility or undue prejudice to the non-moving parties, the district court should grant leave to amend." *Adlife Mktg. & Commcns Co., Inc. v. Best Yet Mkt., Inc*., No. 17-CV-02987 (ADS) (ARL), 2018 WL 4568801, at *1 (E.D.N.Y. Sept. 24, 2018) (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)).

The party opposing the proposed amended pleading has the burden of establishing that amendment would be prejudicial or futile.  *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993); *Jipeng Du v. Wan Sang Chow*, No. 18-CV-01692 (ADS) (AKT), 2019 WL 3767536, at *4 (E.D.N.Y. Aug. 9, 2019).  However, the burden to explain the delay rests with the movant. *SATCOM Int'l Grp. PLC v. ORBCOMM Int'l Partners, L.P.,* No. 98-cv-9095 (DLC), 2000 WL 729110, at *23 (S.D.N.Y. June 6, 2000).  The moving party must attach the proposed amended complaint to the motion, as was done here, specifying the new claims and/or parties intended to be added.  *See Nabatkhorian v. Cnty. of Nassau*, No. 12-CV-1118 (JS) (GRB), 2012 WL 13113646, at *1 (E.D.N.Y. Aug. 9, 2012).

The Second Circuit has clarified the standard to be applied by the district courts in considering motions for leave to amend dependent upon the timing of the proposed amendment:

> The ability of a plaintiff to amend the complaint is governed by Rules 15 and 16 of the Federal Rules of Civil Procedure which, when read together, set forth three standards for amending pleadings that depend on when the amendment is sought. At the outset of the litigation, a plaintiff may freely amend her pleadings pursuant to Rule 15(a)(1) as of right without court permission. After that period ends—

8

either upon expiration of a specified period in a scheduling order or upon expiration of the default period set forth in Rule 15(a)(1)(A)—the plaintiff must move the court for leave to amend, but the court should grant such leave "freely . . . when justice so requires" pursuant to Rule 15(a)(2). This is a "liberal" and "permissive" standard, and the only "grounds on which denial of leave to amend has long been held proper" are upon a showing of "undue delay, bad faith, dilatory motive, [or] futility." The period of "liberal" amendment ends if the district court issues a scheduling order setting a date after which no amendment will be permitted. It is still possible for the plaintiff to amend the complaint after such a deadline, but the plaintiff may do so only up [to] a showing of the "good cause" that is required to modify a scheduling order under Rule 16(b)(4).

*Sacerdote v. NYU*, 9 F.4th 95, 115 (2d Cir. 2021).

The only substantive change Plaintiff seeks to add in the proposed amended complaint is a DTSA claim.[6]  (ECF No. 90 at 8.)  Plaintiff asks the Court to grant leave to amend the complaint citing no undue delay, bad faith, futility, or prejudice at play here.  (*Id.*)  Defendant opposes, arguing that Plaintiff was aware of the facts underlying the new claim; Plaintiff has not properly pled the DTSA elements; and attempts to prolong the proceedings for which he has already expended a considerable amount of resources.  (ECF No. 94 at 16-17.)

### A.  Undue Delay, Bad Faith, and Undue Prejudice

Plaintiff states that it originally sought leave to amend the complaint less than two years after filing the original complaint in August 2020 and no discovery was done since Defendant's request to stay the case was granted.  (ECF No. 90 at 9.)  However, only after Plaintiff retained new counsel was Plaintiff apprised of the existence of the DTSA.  (*Id.*)  Thus, Plaintiff argues there was no delay since Plaintiff relied on his former counsel to bring pertinent claims.  (*Id.*)  Defendant, however, claims that Plaintiff had facts long ago to plead a DTSA claim even *before*

---

[6] During Oral Argument, however, Plaintiff's counsel conceded that there were additional deficiencies in the proposed amended complaint and would request leave to re-plead those deficient allegations.  (ECF No. 104 at 3-4.)

retaining new counsel and now simply seeks to prolong the proceedings and increase fees and costs.  (ECF No. 94 at 12-13, 16.)

 "Mere delay . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) (citation omitted); *see also Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (emphasizing prejudice and bad faith over delay).  Thus, unless the non-movant demonstrates prejudice or bad faith, courts will generally allow the moving party to amend the complaint.  *See City of New York v. Grp. Health Inc.*, 649 F.3d 151, 157 (2d Cir. 2011).

Courts have granted leave to amend despite years of filing after the discovery deadline has passed.  *See Rachman Bag Co. v. Liberty Mut. Ins. Co.*, 46 F.3d 230, 235 (2d Cir. 1995) (affirming district court's decision to grant leave to amend despite four-year delay); *Margel v. E.G.L. Gem Lab Ltd.*, No. 04-CV-1514 (PAC) (HBP), 2010 WL 445192, at *10 (S.D.N.Y. Feb. 8, 2010) (granting motion to amend despite delay of at least six months and noting that "courts frequently grant leave to amend after much longer periods of delay"); *Zomba Recording Corp. v. MP3.Com, Inc.*, No. 00-CV-6831 (JSR), 2001 WL 770926, at *1 (S.D.N.Y. July 10, 2001) (granting leave to amend despite extended delay by plaintiffs given the absence of any material prejudice).  However, "[c]ourts will find that a party has not acted diligently where the proposed amendment is based on information the party knew, or should have known, in advance of the motion deadline." *N.Y. SMSA Ltd. P'ship v. Town of Hempstead,* No. 10-CV-4997 (AKT), 2013 U.S. Dist. LEXIS 37833, at *12 (E.D.N.Y. Mar. 19, 2013).

Further, "a finding that a party is seeking leave to amend solely to gain a tactical advantage supports a finding that such an amendment is made in bad faith." *Feuer v. Cornerstone Hotels Corp.*, No. 14-CV-5388 (JFB) (SIL), 2017 WL 3841841, at *5 (E.D.N.Y.

Aug. 4, 2017), *report and recommendation adopted*, 2017 WL 3842350, at *1 (E.D.N.Y. Aug. 31, 2017); *see also Bank v. Spark Energy, LLC*, No. 19-CV-04478 (PKC) (LB), 2020 WL 6873436, at *2 (E.D.N.Y. Nov. 23, 2020) (finding that bad faith may exist "where a party deliberately waited to see how they would fare on the prior motion to dismiss before requesting leave to amend" or "when a party withholds facts clearly known to it prior to the filing of the complaint, particularly when done for some ulterior purpose") (internal quotation marks and citations omitted).

Here, the undersigned finds undue delay coupled with bad faith in adding this claim for several reasons. *First*, the proposed amendment is certainly not a "new law" adopted during the pendency of this case. Rather, the DTSA has been effective since 2016, far pre-dating the 2020 commencement of this case. Indeed, following adoption of the DTSA, there has been a plethora of commentary on the statute (*see, e.g.,* David Bohrer, *Threatened Misappropriation of Trade Secrets: Making a Federal (DTSA) Case Out of It*, 33 Santa Clara High Tech. L.J. 506 (2017); David S. Levine & Christopher B. Seaman, *The DTSA at One: An Empirical Study of the First Year of Litigation Under the Defend Trade Secrets Act*, 53 Wake Forest L. Rev. 105 (2018); Daniel G. Mackrides, *Trade Secret Law in the Wake of Defend Trade Secrets Act of 2016*, 47 Del. J. Corp. L. 65 (2022)) and an abundance of case law (*see, e.g., Li v. Gelormino*, No. 18-cv-442 (MPS), 2019 U.S. Dist. LEXIS 74188, at *23 (D. Conn. May 2, 2019) (dismissing DTSA claim as "vague and conclusory"); *Idexx Lab'ys v. Bilbrough*, No. 22-cv-00056 (JDL), 2022 U.S. Dist. LEXIS 136676 (D. Me. Aug. 2, 2022) (dismissing plaintiff's DTSA claim for failing to state a claim actionable under the statute); *Pittsburgh Logistics Sys. v. Cox Logistics LLC*, No. 20-817, 2021 U.S. Dist. LEXIS 39533 (W.D. Pa. Mar. 3, 2021) (dismissing misappropriation claims under the DTSA because plaintiff failed to allege that defendant acquired information

11

through improper means).  In short, ignorance of the possible existence of a statutory claim is no justification for delay in this context.  Plaintiff's prior counsel simply had not brought the claim forward.  This is not a case where the statute was enacted only after the case had begun.  *Cf. N.Y. SMSA Ltd. P'ship.*, 2013 U.S. Dist. LEXIS 37833 at *12 (finding that plaintiffs acted diligently in amending their complaint because the "[p]laintiffs could not have moved prior to the enactment of the law on which their new claims are based").  Plaintiff's counsel could not explain why prior counsel had not raised or pled this claim.  *See* ECF No. 104 at 73 ("All I want to say is that whatever happened in the past with prior counsel I can't speak to.")

*Second*, Plaintiff's counsel was aware of the facts that constituted the proposed DTSA claim since September 2021 because the amended complaint in the state court action in Suffolk County dated September 23, 2021, included a misappropriation of trade secrets claim predicated on the same facts as those alleged here.  (*See* ECF No. 93-1 at 20-22.)  Now, Plaintiff's counsel is attempting to add a new claim that should and could have been added earlier.  The liberal standard under the Federal Rules is not a safe harbor for dilatory practice.

*Third* and relatedly, Plaintiff is unable to point to *new* facts to support the instant motion. The facts that arise out of the DTSA claim are the very same facts as those for other claims throughout the operative complaint.  (ECF No. 24); (*see* also ECF No. 104 at 7-8) ("There are no new facts here, Your Honor.")  For example, the proposed complaint alleges Defendant misappropriated trade secrets through improper means and without consent in violation of the DTSA.  But this same misconduct is the essence of the CFAA claim in the operative complaint in which Plaintiff alleges Defendant accessed records with an improper motive to open a competing practice.[7]  (*See* ECF No. 24 at 11-13); *see also Mullane v. United States DOJ*, No. 19-

---

[7] Defendants rely on *Rodriguez v. City of New York*, No. 21-CV-1649 (AMD) (RLM), 2022 U.S. Dist. LEXIS 180308 (E.D.N.Y. Sept. 29, 2022) and *246 Sears Rd. Realty Corp. v. Exxon Mobil Corp.*, No. 09-

cv-12379 (DJC), 2021 U.S. Dist. LEXIS 53255, at *35 (D. Mass. Mar. 19, 2021) (denying

plaintiff's motion to amend because it was futile and there was undue delay since the proposed

added claims are based on the same facts and plaintiff provided no reason for the delay in

bringing the claims now); *Santillan v. Davis*, No. 13-CV- 00734 (JGB) (DFM), 2015 U.S. Dist.

LEXIS 200518, at *7 (C.D. Cal. Sept. 25, 2015) ("The proposed…amended claims are not based

on new facts and therefore could have been made during previous amendments to the

complaint.").

   *Finally*, Plaintiff retained its current counsel on January 28, 2022 (ECF No. 56) but

counsel did not file for leave to amend the pleadings until June 18, 2022 (ECF No. 62.).  Plaintiff

filed its proposed amended pleading on May 8, 2023, almost two years after the November 15,

2021 deadline to amend the pleadings.  *Au fond,* Plaintiff sat on the DTSA claim for quite some

time before requesting leave to file its amended complaint to include this claim.

   Regarding the prejudice prong, Defendant states he will be prejudiced by Plaintiff's

"continued frivolous efforts" to make more claims and has already expended significant

resources in responding to Plaintiff's filings and Plaintiff will continue to delay adjudication of

---

CV-889 (NGG) (JMA), 2012 U.S. Dist. LEXIS 133280 (E.D.N.Y. Sept. 18, 2012).  However, those cases
are inapposite.  In *Rodriguez*, the plaintiff filed an amended complaint and the court thereafter set a
discovery schedule as well as a deadline to amend the pleadings at an initial conference.  2022 U.S. Dist.
LEXIS 180308 at *3.  Plaintiff moved to amend the complaint again and justified the delay stating that
discovery and depositions revealed information to support his motions.  *Id.* at *5.  The court, however,
found that the plaintiff failed to establish good cause to revise his already amended pleading because he
was aware of facts underlying his claim which were exposed through discovery.  *Id.* at *8-10.
Similarly, in *246 Sears Rd. Realty Corp.*, the parties entered into a discovery plan and set a date to amend
the pleading.  2012 U.S. Dist. LEXIS 133280 at *20.  During discovery, parties exchanged letters
allegedly disclosing the proposed fraudulent allegations complained of.  *Id.* at *21.  However, plaintiff
expressly ignored these facts in the letters and attempted to file its motion to amend months beyond the
relevant deadline.  *Id.* at *30-34.  In contrast, here, no discovery has been done because of the stay
ordered pending the decision on Defendant's motion to dismiss.  (See ECF No. 59.)  Thus, Plaintiff could
not have discovered the facts in the manners depicted in *Rodriguez* and *246 Sears*.  However, this still
does not excuse Plaintiff's bad faith because it seeks to amend despite possessing knowledge of the exact
facts surrounding the proposed claim.

this case.  (ECF No. 94 at 17.)  Plaintiff disagrees, arguing that the DTSA claim largely relies on allegations already pled and this could not have been discovered earlier, as discovery is stayed. (ECF No. 95 at 19.)

Prejudice to the nonmoving party is perhaps the most important factor when determining whether to grant a claimant's leave to amend and is often the "most frequent reason for denying leave to amend." *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008).  When considering whether the opposing party may be prejudiced, courts consider whether the new claim would: (1) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (2) significantly delay the resolution of the dispute; (3) prevent the plaintiff from bringing a timely action in another jurisdiction; or (4) whether the opposing party was on notice of the new claim.  Fed. R. Civ. P. 15(a), (a)(2).  Each of these prongs is considered below.

There has been no discovery up until this point because a stay has been in place since March 3, 2022 (ECF No. 59) and again on October 25, 2022.  (*See* ECF No. 104 at 36) ("No discovery whatsoever was done.")  Defendant points to additional expenses for discovery, motion practice, or trial preparation due to the addition of the DTSA claim.  However, according to Defendant, the DTSA claim is based on the same or similar facts as the other claims for which Plaintiff already knew and could have brought the claim earlier.  For that reason, there would not be, if any, additional discovery required if the Court were to add the DTSA claim.  Thus, the undersigned finds that adding the claim would not necessarily result in the expenditure of more resources nor would it significantly delay the case because much of the same evidence for the DTSA claim can be used for the other claims.  And, as for the fourth consideration, because Defendant was on notice of the entire suit, he would have been aware of the DTSA claim, which

arises from the same set of facts.  This analysis weighs in favor of granting Plaintiff's motion to amend.

However, Plaintiff *would* likely be able to bring its cause of action in another jurisdiction, namely in the state action, as explained below.[8]

For these reasons, while there may not be undue prejudice, the Court finds that there was undue delay and bad faith under the circumstances regarding Plaintiff's attempt to amend the complaint at this juncture.  *See Jiggetts v. Allied Int'l Union*, No. 09-cv-7243 (SHS) (RLE), 2010 U.S. Dist. LEXIS 57453, at *3 (S.D.N.Y. May 14, 2010) (denying motion to amend in part because plaintiff could not point to newly discovered facts and "[gave] no reason for his failure to move earlier").  However, in the event that Judge Gujarati disagrees with the undersigned's conclusion, the Court turns to whether Plaintiff's DTSA claim would survive under the futility prong.

## B. Futility

The Court's next task is to determine whether Plaintiff's proposed DTSA claim would be futile.  Plaintiff argues that it has met all the required elements for its proposed claim, while Defendant strenuously opposes.

An amendment is futile if the proposed claim could not withstand a motion to dismiss under Rule 12(b)(6).  *IBEW Local Union No. 58 Pension Trust Fund and Annuity Fund v. Royal*

---

[8] DTSA claims have a statute of limitations of three years, *see* 18 U.S.C. § 1836(d), and there is concurrent jurisdiction, that is, such claims can be brought in either federal or state court.  *See infra* at pp. 29-33.  These events allegedly occurred in 2018 and the statute of limitations would have expired otherwise.  However, because the claims arise under the same transaction or occurrence as the state suit claims, the relation back doctrine would arguably apply there, providing Plaintiff with an opportunity to bring its DTSA claim in the state forum.  *See* Fed. R. Civ. P. 15(c)(B).  That, of course, is a question for the state court.

*Bank of Scotland PLC*, 783 F.3d 383, 389 (2d Cir. 2015).[9]  Accordingly, as Defendant both opposes the proposed amendment and moves to dismiss the claim for failure to state a claim, both are considered here.

The DTSA, codified in 18 U.S.C. § 1831, *et seq*., "created a federal cause of action for the misappropriation of trade secrets used in interstate commerce." *Core SWX, LLC v. Vitec Grp. US Holdings, Inc.*, No. 21-CV-1697 (JMA) (JMW), 2022 U.S. Dist. LEXIS 125198, at *9-10 (E.D.N.Y. July 14, 2022) (citing *Elsevier Inc. v. Doctor Evidence, LLC*, No. 17-cv-5540 (KBF), 2018 WL 557906, at *3 (S.D.N.Y. Jan. 23, 2018)); *see also* 18 U.S.C. § 1836(b)(1).  "To state a claim for trade secret misappropriation under the DTSA, a plaintiff must plausibly allege that (1) it possessed a trade secret, and (2) the defendant misappropriated the trade secret." *Rodney v. United Masters,* No. 21-CV-5872 (DG) (LB), 2023 U.S. Dist. LEXIS 33499, at *5 (E.D.N.Y. Feb. 10, 2023).[10]

While there is no heightened pleading standard under the DTSA, claimants must identify trade secrets with "sufficient specificity" and put the "defendant on notice of the bases for the claim[s]" being pled.  *See Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp., Inc.*, 68 F.4th 792, 801 (2d Cir. 2023); *see also Zabit v. Branometry*, *LLC*, 540 F. Supp. 3d 412, 422 (S.D.N.Y. 2021).

---

[9] Indeed, cases in this Circuit have denied motions to amend based on futility alone.  *See Schwasnick v. Fields*, No. 08-CV-4759 (JS) (ARL), 2010 U.S. Dist. LEXIS 65958, at *30-31 (E.D.N.Y. June 30, 2010) (denying motion to amend based on futility because plaintiff simply paraphrased his baseless charges and provided scant information to support his claims); *Gurvey v. Cowan, Liebowitz & Latman, P.C.*, No. 06 Civ. 1202 (LGS) (HBP), 2013 U.S. Dist. LEXIS 99268, at *30 (S.D.N.Y. July 15, 2013) (noting that there was justification to deny plaintiff's motion to amend based on futility alone because plaintiff claims lacked specificity or authority or were otherwise time barred).

[10] New York law also requires a similar showing to demonstrate misappropriation of a trade secret: "[U]nder New York law, 'a party must demonstrate: (1) that it possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means.'"  *Rodney*, 2023 U.S. Dist. LEXIS 33499 at *5-6 (citing *24 Seven, LLC v. Martinez*, No. 19-CV-7320, 2021 U.S. Dist. LEXIS 15480, at *4 (S.D.N.Y. Jan. 26, 2021)).

The proposed Amended Complaint tees up the threshold question of whether the alleged stolen documents constitute a "trade secret" under the DTSA and if so, whether Defendant was given notice of the claim, including whether Plaintiff has sufficiently pled that the information was held in secret and that an economic benefit can be derived from the documents. Next, the Court looks to whether Plaintiff has plausibly alleged misappropriation. And finally, the Court analyzes whether the statutory immunity exception applies.

### i.    Does (a) Patient Information and (b) Financial Records Constitute Trade Secrets?

Plaintiff alleges that Defendant misappropriated two different types of trade secrets, namely patient information and financial records, which fall squarely within the ambit of the DTSA.

The DTSA defines "trade secret" to include "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes," so long as: (1) "the owner thereof has taken reasonable measures to keep such information secret" and (2) "the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3).

There is "no one-size-fits all definition to a trade secret [under the DTSA and New York trade secret misappropriation law] . . .," but the following factors guide courts in undertaking the analysis:

> (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the business to guard the secrecy of the information; (4) the value of the information to the business and its competitors; (5) the amount of effort or money

17

expended by the business in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Univ. Processing LLC v. Weile Zhuang*, No. 17-CV-10210 (LTS), 2018 WL 4684115, at *3 (S.D.N.Y. Sept. 28, 2018); *Uni-Sys., LLC, v. U.S. Tennis Assoc., Inc*., 350 F. Supp. 3d 143, 172 (E.D.N.Y. 2018) (citations omitted) (same).

A party is not, however, required to allege all factors in order to establish that information is a trade secret. *Amimon Inc. v. Shenzhen Hollyland Tech Co. Ltd*., No. 20-cv-9170 (ER), 2021 WL 5605258, at *10 (S.D.N.Y. Nov. 30, 2021) (citing *Iacovacci v. Brevet Holdings, LLC*, 437 F. Supp. 3d. 367, 380 (S.D.N.Y. 2020)) (noting that the factors are guideposts rather than elements). Nonetheless, determining whether something constitutes a trade secret is a fact-specific question to be analyzed on a case-by-case basis. *See Syntel Sterling Best Shores Mauritius Ltd*., 68 F.4th at 801.[11]

A party alleging misappropriation under the DTSA "has no obligation to reveal [its] secrets in the [c]omplaint simply to prove that they exist," but must provide the opposing party with fair notice of what the claim is in some "identifying detail" that the trade secret was misappropriated. *Island Intellectual Prop., LLC v. Stonecastle Asset Mgmt. LLC*, 463 F. Supp. 3d 490, 500 (S.D.N.Y. 2020). Alleging general categories of information and data as trade secrets is not enough to put a defendant on notice of the contours of the misappropriation claims. *TRB Acquisitions LLC v. Yedid*, No. 20-CV-0552 (JMF), 2021 WL 293122, at *2 (S.D.N.Y. Jan. 28, 2021) (citation omitted).

---

[11] The undersigned also notes that while the question of whether information constitutes a trade secret is "a question of fact not resolvable on a motion to dismiss, courts dismiss claims involving trade secrets where they are not actually secret or there is no discernible economic value from them not being generally known." *UrthTech LLC v. GOJO Indus*., No. 22-cv-6727 (PKC), 2023 U.S. Dist. LEXIS 125555, at *27 (S.D.N.Y. July 20, 2023); *see also Oneida Grp., Inc. v. Steelite Int'l U.S.A., Inc.*, No. 17-cv-0957 (ADS) (AKT), 2017 U.S. Dist. LEXIS 206717, at *16 (E.D.N.Y. Dec. 15, 2017) (noting that whether information is a secret is a generally a question of fact).

Plaintiff alleges the patient files contained "patient names, medical history, surgical procedures, medications and other personal, sensitive and confidential data protected by the Health Insurance Portability and Accountability Act ("HIPAA")." (ECF No. 91-1 at 9.) These, Plaintiff urges, are trade secrets. Plaintiff relies on *Grado, M.D., Inc. v. Phx Cancer and Blood Disorder Treatment Inst. PLLC*, 603 F. Supp. 3d 799, 810-811 (D. Ariz. May 16, 2022) for the proposition that patient records constitute a trade secret under the DTSA.

*Grado* is distinguishable because it focused solely on the misappropriation prong. Nothing in *Grado* stands for the proposition that patient information is expressly considered a trade secret. Indeed, at oral argument, Plaintiff's counsel could not point to any trade secret discussion in *Grado*; he merely stated that the court would not move on to the misappropriation prong if it had not established patient information as a trade secret under the DTSA. (*See* ECF No. 104 at 9.) It could also mean that the issue of whether patient information is a trade secret was not raised.

Further, Plaintiff suggests that the confidential nature of the patient records transforms it into a trade secret. However, simply because a document is confidential, it does not follow that it is a "trade secret." *See Core SWX, LLC v. Vitec Grp. US Holdings, Inc.*, No. 21-CV-1697 (JMA) (JMW), 2022 U.S. Dist. LEXIS 125198, at *14 (E.D.N.Y. July 14, 2022) ("Trade secrets are not one and the same as confidential information."); *see also Sapir v. Rosen*, No. 20-cv-06191 (RA), 2021 U.S. Dist. LEXIS 189350, at *16 (S.D.N.Y. Sept. 30, 2021) (noting that plaintiff conflated the concept of a trade secret with confidential information and their failure to be specific denies the court of meaningfully assessing the protectability of the documents in the complaint).

It is beyond peradventure that patient information is "confidential" information.  *See* Amer. Med. Ass'n., *Privacy, Confidentiality & Medical Records*, ACCESS TO MEDICAL RECORDS BY DATA COLLECTION COMPANIES, https://code-medical-ethics.ama-assn.org/ethics-opinions/access-medical-records-data-collection-companies (last visited Sept. 13, 2023) ("Information gathered and recorded in association with the care of a patient is confidential."); *United States ex rel. Kaplan v. Metro. Ambulance & First-Aid Corp.*, 395 F. Supp. 2d 1, 2 (E.D.N.Y. 2005) (HIPAA "ensure[s] the integrity and confidentiality of [patient] information"). It is does not necessarily follow though that all confidential information is a trade secret.  The concepts are legally distinguishable and should not be blurred.  Jeffrey Mordaunt & Joshua Swedlow, *Why Trade Secret Litigation is on the Rise*, Law 360 (Nov. 14, 2017), https://www.law360.com/articles/983195/why-trade-secret-litigation-is-on-the-rise ("All trade secrets are confidential information, but not all confidential information is a trade secret."); *Am. Student Fin. Grp., Inc. v. Aequitas Capital Mgmt.*, No. 12-cv-2446 (CAB) (JMA), 2015 U.S. Dist. LEXIS 193979, at *27-28 (S.D. Cal. Feb. 12, 2015) ("While all trade secrets are confidential, not all confidential information is a trade secret.").

Plaintiff alleges that it need not disclose every detail to allege a trade secret (ECF No. 95 at 14).  However, noticeably absent from its motion, reply, oral argument, and proposed complaint is *any* detail whatsoever about how the allegations satisfy the minimum pleading requirements.  *See Intrepid Fin. Partners, LLC v. Fernandez*, No. 20-CV-9779 (LTS), 2020 U.S. Dist. LEXIS 244742, at *12 (S.D.N.Y. Dec. 30, 2020) ("[plaintiff] merely references categories of information concerning its clients and ordinary business operations").

For the reasons stated, the undersigned finds that Plaintiff's generalized category of patient records is simply not sufficient to put Plaintiff on notice of a trade secret.

Turning to the financial records, Plaintiff has failed to plead with even the barest of specificity that the financial information is indeed a trade secret. Instead, Plaintiff only states that Defendant misappropriated confidential information including financial records which contained information regarding the business and its operations and services. (ECF No. 91-1 at 4-5, 13.) However, at best, this assertion falls within a "general" category of information because Plaintiff does not plead that any specific documents were stolen, for example, profit and loss analyses, business plans, or income statements.[12] *See Core SWX, LLC*, 2022 U.S. Dist. LEXIS 125198 at *14 (finding that plaintiff failed to specify details about the proprietary product designs and marketing development information including specific algorithms, portions of the product, and documents); *see also Health Care Facilities Partners, LLC v. Diamond*, No. 21-CV-1070, 2023 U.S. Dist. LEXIS 97611, at *46 (N.D. Ohio June 5, 2023) (finding no evidence to conclude that the financial statements identified would meet the definition of a trade secret under the DTSA because plaintiff failed to demonstrate that they would need trade secret protection); *cf Jasco Tools, Inc. v. Dana Corp. (In re Dana Corp.)*, 574 F.3d 129, 152 (2d Cir. 2009) (noting that "proprietary data relating to pricing, costs, systems, and methods" is a trade secret).

Accordingly, the Court finds that Plaintiff's allegations supporting the proposed DTSA claim for alleged misappropriation of trade secrets based upon the patient information and financial records are insufficient to sustain a claim.

---

[12] It was only at the oral argument that Plaintiff's counsel provided some specificity regarding what financial information was stolen: "I know it's not specified in the complaint in detail, but *my understanding* is that financial information taken has to do with the profits and losses of the practice." (ECF No. 104 at 13) (emphasis added). However, there is a paucity of this information in the proposed pleading.

Defendant next claims that even if Plaintiff could allege existence of a trade secret under the DTSA, the proposed claim fails because Plaintiff has not alleged that it made extensive efforts to protect the information or derive an economic value from keeping the information from others. (ECF No. 94 at 15.) Plaintiff simply counters that Defendant would not have stolen the information had it been publicly available to everyone, therefore there is some benefit to retaining these records. (ECF No. 95 at 14.)

Courts have found that taking "reasonable measures" to safeguard against divulging trade secret information includes "confidentiality agreements, password-protection, sharing information with employees only on a need-to-know basis, emphasizing the need to keep the information confidential . . . and frequently reminding employees of the need to maintain confidentiality." *Inv. Sci., LLC v. Oath Holdings Inc*., No. 20-cv-8159 (GBD), 2021 WL 3541152, at *3 (S.D.N.Y. Aug. 11, 2021) (citation omitted); *see Elsevier*, 2018 WL 557906, at *4 ("The extent of measures taken by the business to guard the secrecy of the information is only one factor in [the trade secret] analysis, [but] it is the most critical one."). A party alleging trade secret misappropriation "must show only sufficient secrecy, not absolute secrecy, meaning that except by use of improper means, there would be difficulty in acquiring the information." *Zabit v. Brandometry, LLC*, 540 F. Supp. 3d 412, 427 (S.D.N.Y. 2021) (finding that where numerous other individuals had access to the purported trade secret and that the plaintiff licensed the information to the defendant without confidentiality agreements, instructions to keep the information secret, or other protective security measures, the threshold for sufficient secrecy was not met); *see also LoanDepot.com, LLC v. CrossCountry Mortg., LLC*, No. 22-cv-5971 (LGS), 2023 U.S. Dist. LEXIS 100230, at *15-16 (S.D.N.Y. June 8, 2023) (attesting to protecting its trade secrets by requiring all employees to enter into a confidentiality agreement and

acknowledge the handbook regarding the security policy; and using password-protection and encrypting information to prevent theft of documents).

In Plaintiff's proposed Amended Complaint, Plaintiff alleges that it maintained secrecy of this information "including limiting its disclosure to essential personnel only." (ECF No. 91-1 at 11.) It further states that Defendant was prohibited from "improperly obtaining patient files, trade secrets and confidential information belonging to Plaintiff." (*Id.*) But Plaintiff fails to allege how this information was "proprietary and confidential." For instance, the proposed Amended Complaint alleges that Defendant "unlawfully accessed, downloaded and misappropriated confidential patient files from Plaintiff's computer system." (ECF No. 91-1 at 9.) However, Plaintiff has not distinguished whether this system was password protected or whether the information was encrypted. *See Core SWX LLC*, 2022 U.S. Dist. LEXIS 125198 at *24-25 (finding that defendants failed to allege information about the secrecy of the information or security of the system sufficient to show they took reasonable measures to keep the trade secrets confidential); *Turret Labs USA, Inc. v. CargoSpring, LLC,* No. 19-CV-6793(EK) (RML), 2021 U.S. Dist. LEXIS 27838, at *11 (E.D.N.Y. Feb. 12, 2021) (dismissing the plaintiff's DTSA claim because of its failure to allege whether the information was kept secret); *see also Lawrence v. NYC Med. Practice, P.C.*, No. 18-cv-8649 (GHW), 2019 WL 4194576, at *5 (S.D.N.Y. Sept. 3, 2019) (finding that complaint offered "scant facts" about what "reasonable steps" the party took to protect secrecy of its confidential information, even considering employees signed agreements that contained "trade secret protections," because such agreements alone do not suggest existence of a trade secret).

Further, in order to qualify as a true trade secret, the DTSA mandates that "the information derive[s] independent economic value . . . from not being generally known to, and

23

not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3)(b).

Financial information *could* be used to derive an economic benefit especially if, for example, Plaintiff is looking to sell its business. However, the proposed Amended Complaint only alleges that the trade secret and patient files derives an economic benefit because it is not generally known to or readily ascertainable through proper means by another person who can get financial value from disclosing or using the information. (ECF No. 91-1 at 11.) This lone statement is insufficient to demonstrate that there was economic value to be gained from these documents. *See Core SWX LLC*, 2022 U.S. Dist. LEXIS 125198 at *26 (finding it vague that defendants merely stated that the information derived economic value and was not readily ascertainable through proper means and were damaged as a result of the misappropriation); *Intrepid Fin. Partners, LLC*, 2020 U.S. Dist. LEXIS 244742 at *15-16 (finding that the amended complaint lacked sufficient facts to plausibly plead a DTSA claim "as opposed to the general proposition that there is a broad range of confidential information that is valuable to Intrepid, that all of its employees are obliged to keep confidential, and that would provide a commercial advantage to competitors"); *Greenberg v. Miami Children's Hosp. Research Inst., Inc*., 264 F. Supp 2d 1064, 1077 (S.D. Fla. 2003) (finding no trade secret where plaintiff did not allege the patient lists derived an economic value just because it was not generally known to others); *cf Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp., Inc*., 68 F.4th 792, 801 (2d Cir. 2023) (finding that each trade secret was adequately described and plaintiff provided information how it was developed; its value to the company; and that it was kept secretly). Such a flaw in the pleadings is fatal to Plaintiff's proposed claim. Thus, the undersigned finds that Plaintiff has

failed to allege whether any of the proposed trade secret information was kept in secret or would derive an independent economic benefit.[13]

### ii.    *Did Plaintiff Plausibly Allege that Defendant Misappropriated this Information?*

Defendant next argues that Plaintiff's allegations concerning misappropriation of trade secrets are conclusory because it has not cited concrete evidence proving that Defendant opened a competing practice or is retaining information with the intent to compete with Plaintiff.  (ECF No. 94 at 10, 14.)  Plaintiff postulates that it has proven misappropriation because it can be *inferred* he used confidential information to assist him in opening a competing practice.  (ECF No. 95 at 14.)

To establish misappropriation "[u]nder the DTSA, 'a party must show an unconsented disclosure or use of a trade secret by one who (i) used improper means to acquire the secret, or, (ii) at the time of disclosure, knew or had reason to know that the trade secret was acquired through improper means, under circumstances giving rise to a duty to maintain the secrecy of the trade secret, or derived from or through a person who owed such a duty.'"  *Amimon Inc. v. Shenzhen Hollyland Tech Co. Ltd*., No. 20-cv-9170 (ER), 2021 WL 5605258, at *11 (S.D.N.Y. Nov. 30, 2021) (citation omitted). Simply put, "[t]here are three ways to establish misappropriation under the DTSA: improper acquisition, disclosure, or use of a trade secret without consent." *Oakwood Laby's, LLC v. Thanoo*, 999 F.3d 892, 908-09 (3d Cir. 2021) (citing 18. U.S.C. § 1839(5)). "Improper means under the Act includes theft, bribery, misrepresentation, [and] breach or inducement of a breach of a duty to maintain secrecy, but excludes reverse engineering, independent derivation, or any other lawful means of acquisition." *Altman Stage Lighting, Inc. v. Smith*, No. 20-CV-2575 (NSR), 2022 WL 374590, at* 4 (S.D.N.Y. Feb. 8, 2022)

---

[13] At Oral Argument, Plaintiff's counsel conceded that if the patient information was not considered a trade secret, then the claim under the DTSA would fail.  (*See* ECF No. 104 at 13.)

(alteration in original) (quoting 18 U.S.C. § 1839(6)) (internal quotation marks and additional citation omitted).

Plaintiff's proposed Amended Complaint fails to describe how Defendant misappropriated the information—specifically, how the alleged trade secrets were used to compete with Plaintiff.  (*See* ECF No. 104 at 17) (discussing Plaintiff's failure to allege use of the patients' medical records).  Instead, Plaintiff only states in a conclusory fashion that Defendant sought to use this information "as a springboard to assist him with opening a competing practice."  (ECF No. 91-1 at 4-5.)

Plaintiff claims that it satisfies the "improper means" prong of the DTSA because Defendant essentially stole the information on his personal computer which constitutes a theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy. (ECF No. 90 at 13.)  However, Plaintiff failed to allege "who actually had access, how many people had access, and how that information was accessed."  *See Core SWX LLC*, 2022 U.S. Dist. LEXIS 125198 at *32; *see also Ad Lightning, Inc. v. Clean.io, Inc*., No. 19-CV-7367 (JPO), 2020 WL 4570047, at *3 (S.D.N.Y. Aug. 7, 2020) (finding that besides alleging three former employees had access to all of the plaintiff's information through a certain program, the plaintiff failed to allege facts suggesting that the former employees actually acquired the information through improper means); *cf. Iacovacci v. Brevet Holdings, LLC,* 437 F. Supp. 3d 367, 381 (S.D.N.Y. 2020) (finding misappropriation adequately pled where allegation stated that employee stole information by forwarding several documents to his personal email and disseminating them, and also alleged that employee modified documents for his own use).

Plaintiff's threadbare conclusions will not carry the day in this case and thus the undersigned finds that Plaintiff has not satisfied the misappropriation element under the DTSA.

*See Case Props. Servs., LLC v. Columbia Props. Phoenix, L.P.*, No. 17-cv-03110 (NSR), 2018 U.S. Dist. LEXIS 158199, at *13 (S.D.N.Y. Sept. 17, 2018) (dismissing plaintiff's claims under the DTSA for merely reciting the statute's text); *see also Core SWX LLC*, 2022 U.S. Dist. LEXIS 125198 at *30-31 (finding that defendants did not put forth sufficient facts to claim that the trade secret was acquired via improper means or disclosed without consent when the information was alleged to have been taken by someone who knew the employee did not have authorization to take those documents and that it was improper).

   iii.   ***Is Defendant Covered Under the Statutory Immunity Exception?***

In the event Judge Gujarati disagrees with the foregoing conclusion, the undersigned next considers whether Defendant is protected under the statutory immunity exception under the DTSA.

Defendant argues that it is entitled to statutory immunity under the DTSA as the only disclosure he made was to the DOL and thus cannot be held liable under any trade secret law for disclosing a trade secret made in confidence to a government agency for reporting a suspected legal violation. (ECF No. 94 at 13.) Plaintiff opposes this defense, stating that the Amended Complaint alleges the misappropriation of Plaintiff's confidential information occurred around October 2018 so that he could open his own competing practice—long before the disclosures were made to the DOL. (ECF No. 95 at 13.)

The DTSA provides immunity to individuals from liability under any federal or state trade secret law in certain circumstances, including: (1) disclosure to the government for the purpose of reporting or investigating a suspected violation of the law; (2) disclosure in court documents filed under seal; and (3) disclosure to an attorney and use of trade secret information in a lawsuit for retaliation by an employer for reporting a suspected violation of law. *Gatti v.*

*Granger Medical Clinic, P.C.*, 529 F. Supp.3d 1242, 1267 (D. Utah 2021).  18 U.S.C. §

1833(b)(1)–(2).  However, the DTSA does not limit liability for "an act that is otherwise

prohibited by law, such as the unlawful access of material by unauthorized means." *Id.* §

1833(b)(5).

 As emphasized above, Plaintiff fails to plead how Defendant used the information to

compete with AA Medical because the only forum in which this information was disclosed was

before the DOL.  (ECF No. 97 at 7.)  That appears to be undisputed.  Such a disclosure is

protected under the DTSA.

 For these reasons, the undersigned finds that Plaintiff has failed to plausibly plead the

requisite elements of a DTSA claim and in any event, the statutory immunity exception would

appear to apply.

 On balance, Plaintiff's failure to satisfy the motion to amend prongs is fatal to its claim—

there was an undue delay in filing the motion to amend, the claim was brought in bad faith, and

Plaintiff has not sufficiently pled a claim under the DTSA to potentially survive a motion to

dismiss.  Thus, the Court respectfully recommends that Plaintiff's motion to amend be denied.


**MOTION TO DISMISS**

 Since the DTSA has already been addressed and the Court recommends denying the

motion to amend, the same recommendation follows as to the motion to dismiss that claim,

namely, that it ought to be granted.  The Court next considers the Plaintiff's remaining claims in

the operative complaint—the fraud, prima facie tort, CFAA, and unjust enrichment claims—to

determine whether Defendant's motion to dismiss should be granted.

 To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough

facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.  When considering a motion to dismiss, the Court must assume all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  However, this tenet does not apply to legal conclusions or "threadbare recitals of a cause of action's elements." *Iqbal*, 556 U.S. at 663.  Pleadings that offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  More is required.

In determining the adequacy of a claim under Rule 12(b)(6), a court is generally limited to "facts stated on the face of the complaint." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).  Courts may also consider any documents that are attached to the complaint. *Lohan v. Perez*, 924 F. Supp. 2d 447, 452–53 (E.D.N.Y. 2013).  The undersigned analyzes Plaintiff's claims pursuant to this framework.

### A. Prior Action Pending and Abstention Doctrines

Before delving into the merits of Plaintiff's remaining claims, the Court must first address whether Plaintiff's pending prior state court lawsuit precludes this Court from proceeding.  In his motion, Defendant asks the court to dismiss this suit because of other pending, significantly similar, suits under the prior pending action and *Colorado River* abstention doctrines.  (ECF No. 94 at 35-37.)  Plaintiff argues that other pending actions does not provide grounds for dismissal here.  (ECF No. 95 at 27.)

"The general rule among federal district courts is to avoid duplicative litigation . . . [so] when a party files a suit related to a previously-pending suit, the Court looks to the 'prior pending action doctrine' to determine whether the subsequent action should . . . be stayed, or be dismissed." *Lexico Enters., Inc. v. Cumberland Farms, Inc.*, 686 F. Supp. 2d 221, 224 (E.D.N.Y. 2010).  Courts in this Circuit consistently hold that the prior pending action doctrine is limited to scenarios where the lawsuits are *both* pending in federal court.  *WindServe Marine, LLC v. US Workboats, LLC*, 20-cv-532 (ENV) (RLM), 2021 WL 5749827, at *4 n.4 (E.D.N.Y. Apr. 16, 2021) (differentiating between the prior pending action doctrine analysis and the *Colorado River* abstention analysis, as the former considers staying/dismissing a suit in federal court that is duplicative of another federal court suit, and the latter applies to scenarios where one case is in federal court and one case is in state court); *Simmons v. Reich*, No. 19-CV-3316 (EK) (ST), 2020 WL 7024345, at *6 n.8 (E.D.N.Y. Nov. 30, 2020) (same) (citing *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000)).

Here, there is a state court action, not another federal action, asserting almost duplicative claims under the same set of facts as the instant federal action.  Therefore, the prior action pending doctrine is not applicable, and instead the Court is guided by the *Colorado River* doctrine which addresses situations in which there are duplicative suits at the federal and state level.

Under "'exceptional circumstances,' a federal court may abstain from exercising jurisdiction when a parallel state-court litigation could result in 'comprehensive disposition of litigation' and abstention would conserve judicial resources."  *Niagara Mohawk Power Corp. v. Hudson River-Black River Regul. Dist.*, 673 F.3d 84, 100 (2d Cir. 2012) (quoting *Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800, 813, 817-18 (1976)).

Under the *Colorado River* doctrine, courts weigh six factors in determining whether "exceptional circumstances" exist for abstaining when a party files parallel actions in state court and federal court: (1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) the relative convenience of the forums; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights. *Id.* (quoting *Colorado River*, 424 U.S. at 813, 817) (additional citations omitted). "No single factor is determinative, and the decision whether to abstain is left to the trial court's sound discretion." *Ferolito v. Menashi*, 918 F. Supp. 2d 136, 142 (E.D.N.Y. Jan. 15, 2013) (citations omitted). The burden of persuasion rests on the party *opposing* the exercise of federal jurisdiction. *Arkwright-Boston Mfrs. Mutual Ins. Co. v. City of N.Y.*, 762 F.2d 205, 210 (2d Cir. 1985).

However, before deciding whether abstention under *Colorado River* is appropriate, "a district court must first determine whether the federal and state court cases are parallel." *Imbedded Artists Inc. v. Kinchen*, No. 20-CV-3535 (LDH) (RLM), 2022 WL 356429, at *3 (E.D.N.Y. Feb. 7, 2022) (citations omitted). "Suits are parallel when substantially the same parties are contemporaneously litigating the same issue in another forum." *Id.* (citation omitted).

Here, the lawsuit in the state court and the federal court are parallel in that they concern the same parties litigating the same or very similar issues in a different, state forum. Plaintiff states that the claims there are different from those alleged here because the state claims arise solely out of Defendant's breach of contract. (ECF No. 95 at 27); (ECF No. 104 at 27.)

However, at oral argument, Plaintiff's counsel conceded that there were at least three claims common to both the federal and state suits: misappropriation of patient records and financial statements; breach of contract for failure to complete the employment term and fulfill professional duties; and tortious interference.  (*See* ECF No. 104 at 27-28, 30-31.)  And, he agreed that the DTSA claim could have also been raised in state court.  (*Id.* at 33) (Q: "So couldn't [the DTSA claim] be brought in state court?" A: "It could….")

The first and second factors of the *Colorado River* doctrine are irrelevant—there is no res involved and both courts are located in New York.  Concerning the third factor, because there are several claims that are common to both the state court action and the federal action, there is a significant risk of piecemeal or otherwise inconsistent rulings and judgments concerning the same set of facts.  For example, the state court could potentially find that the misappropriation of information claim was sufficiently pled, which would lead to an inconsistent ruling considering that it is recommended that the DTSA claim be dismissed here.

As for the fourth factor, the state court action was filed before the federal action, which weighs in favor of abstention.  Turning to the fifth factor, New York state law would prevail over these claims, with the exception of the CFAA and the DTSA.

And finally, state procedures would be adequate for Plaintiff to proceed in state court because both federal claims, namely, the DTSA and the CFAA claims can be brought in state or federal court.  *See Rios v. Peterson*, No. 21-cv-00063 (JVS) (KESx), 2021 U.S Dist. LEXIS 260702, at *7 (C.D. Cal. Sept. 15, 2021) (finding concurrent jurisdiction over both the DTSA and CFAA claims); *Cognate Bioservices, Inc. v. Smith*, No. CCB-13-1797, 2016 U.S. Dist. LEXIS 30649, at *27 n.12 (D. Md. Mar. 10, 2016) (noting that "courts in other circuits have concluded that the CFAA creates concurrent jurisdiction"); *Prominent Consulting LLC v. Allen*

*Bros.*, 543 F. Supp. 2d 877, 884 n.6 (N.D. Ill. 2008) (mentioning that both federal and state courts have concurrent jurisdictions over CFAA claims); *cf. Iacovacci v. Brevet Holdings, LLC*, 2019 U.S. Dist. LEXIS 80421, at *12-15 (S.D.N.Y. May 9, 2019) (declining to abstain because the facts surrounding the CFAA claims for the state and federal actions were not parallel).

Accordingly, the undersigned finds *Colorado River* abstention appropriate in this case and respectfully recommends that the Court abstain from exercising jurisdiction of this action. However, notwithstanding this recommendation, the undersigned analyzes Defendant's outstanding claims below in the event Judge Gujarati concludes otherwise as to abstention.

**B.  Fraud**

Defendant contends that the Complaint fails to allege fraud with particularity per Rule 9(b) (ECF No. 94 at 23) because Plaintiff failed to point to "a single instance of a fraudulent statement by Defendant" and cannot demonstrate Defendant's alleged intent to compete.  (*Id.* at 24.)  But Plaintiff responds it has adequately pled fraud in stating that Defendant designed a "scheme" to enter the United States.  (ECF No. 95 at 22.)

Defendant also asserts that the fraud claim rests in breach of contract, namely the Agreement, which is impermissible. (ECF No. 94 at 24-25.)  Plaintiff argues, however, that the Agreement does not have any affirmative obligation surrounding Defendant's visa so this matter is extraneous to the contract because "neither party had any affirmative contractual obligation," as there were no provisions in the Agreement concerning the H1-B visa.  (ECF No. 95 at 22-23.)

Under New York law, the elements of a common-law fraud claim are (1) a material misrepresentation or omission of fact; (2) made by defendant with knowledge of its falsity; (3) intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff.  *MetLife Invs. USA Ins. Co. v. Zeidman*, 734 F. Supp. 2d 304, 312 (E.D.N.Y. 2010) (citing *Crigger v. Fahnestock & Co., Inc.*, 443 F.3d 230, 234 (2d Cir. 2006)).  To survive a

motion to dismiss under Federal Rule of Civil Procedure 9(b)'s heightened pleading standard for fraud claims, a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent[;] (2) identify the speaker[;] (3) state where and when the statements were made[;] and (4) explain why the statements were fraudulent." *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004) (citation omitted).

The alleged misrepresentation that Plaintiff grounds its fraud claim on is Defendant's application for the orthopedic surgeon position. Plaintiff alleges that "Defendant contacted the Plaintiff to apply for a position as an orthopedic surgeon requesting that the Plaintiff sponsor him for an H-1B visa," and that Plaintiff agreed to hire Defendant for the position and to sponsor his H-1B visa. (ECF No. 24 ¶¶ 13, 58.) These allegations fail to meet Rule 9(b)'s heightened pleading standard. Indeed, at oral argument, Plaintiff could not point to any proof or explicit fraudulent statement to demonstrate Defendant's intent to support the fraud claim. (ECF No. 104 at 17-18.). To the contrary, Plaintiff's allegations establish that Defendant expressed his desire to work for Plaintiff to obtain an H-1B visa. No misrepresentation was identified.

In any event, the claim is better suited under a breach of contract theory. Cases dating back to the 1800s have stated that a failure to perform an agreement, like the situation here, simply does not constitute fraud, but rather a breach of contract. *See Rogers v. Salmon*, 8 Paige Ch. 559 (N.Y. Ch. 1841) (noting that to failure to perform an agreement is not fraud); *see also Marcella v. ARP Films, Inc.*, 778 F.2d 112, 119 (2d Cir. 1985) ("A simple failure to perform promised acts is a breach of contract, not fraud."); *Ernest v. Horvath*, No. 73-cv-1248, 1977 U.S. Dist. LEXIS 13761, at *7 (S.D.N.Y. Sept. 28, 1977) ("An alleged failure to perform an agreement is not fraud, and a cause of action for fraud will not lie when the only fraud charged relates to a breach of contract.").

Thus, the fraud claim should be dismissed. *See Moore v Liberty Power Corp., LLC*, 897 N.Y.S.2d 723 (App. Div. 2d Dep't 2010) (dismissing fraud claim where "[t]he plaintiff failed to allege or provide details of any misstatements or misrepresentations made specifically by the defendant's representatives to him, as required by [state law]").

C. **Prima Facie Tort**

Defendant alleges that Plaintiff cannot make out its prima facie tort claim because it fails to demonstrate that Defendant's sole motivation for Defendant's conduct was "disinterested malevolence." (ECF No. 94 at 26.)   However, Plaintiff specifically cites to Defendant's conduct which was done specifically to harm Plaintiff: Defendant's "unstable, open[] threat[s] to destroy the practice, fail[ure] to follow hospital rules and regulations, jeopardiz[ing] patients, caus[ing] Plaintiff shame and embarrassment, and refus[ing] to scrub in" as reasons for bringing this cause of action.  (ECF No. 95 at 24.)

To succeed on a *prima facie* tort claim in New York, a plaintiff must show (1) intentional infliction of harm; (2) causing special damages; (3) without excuse or justification; (4) by an act or series of acts that would otherwise be lawful. *Katz v. Travelers*, 241 F. Supp. 3d 397, 405 (E.D.N.Y. 2017). The first element requires "disinterested malevolence," meaning that a plaintiff must go above showing that the defendant's conduct was harmful, but rather was done with the sole intent to harm. *Id.* (quoting *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 304 (S.D.N.Y. 2002)). The existence of motives other than disinterested malevolence—such as profit, self-interest, or business advantage—will undermine *a prima facie* tort claim. *Id.* (quoting *Twin Lab'ys., Inc. v. Weider Health & Fitness*, 900 F.2d 566, 571 (2d Cir. 1990)).

Plaintiff cannot get past the first element to prevail on its claim.  Plaintiff alleges that Defendant "engaged in threatening and extortive conduct *in an attempt to unjustly enrich himself and gain pecuniary and other advantages*." (ECF No. 24 ¶ 65 (emphasis added).)  Based on

Plaintiff's own allegations, it appears that Defendant did not merely harbor the intent to harm

alone, but rather intended on acting in his own self-interest for pecuniary gain.  Plaintiff's

counsel conceded at Oral Argument that the Complaint consists of allegations indicating self-

interested acts.  (*See* ECF No. 104 at 21-22) (noting that disinterested malevolence must be done

solely with the intent to harm but that some facts in Plaintiff's proposed complaint deal with self-

interested actions).  Plaintiff's own allegations are fatal to its *prima facie* tort cause of action. As

above, Defendant's arguments are meritorious.

### D.  CFAA

Plaintiff argues that Defendant was not authorized to use the computer system to access

the medical records for those he did not treat and for financial information he was not ordinarily

privy to as a surgeon.  Defendant states that it had authorization to access the computer system,

but that Plaintiff alleges he misused the information and wanted to transmit it to the DOL to

lodge complaints against Plaintiff and tarnish its reputation.  (ECF No. 94 at 19.)

"The CFAA, in relevant part, provides a federal cause of action against a person who

'intentionally accesses a computer without authorization or exceeds authorized access, and

thereby obtains . . . information from any protected computer.'"  *Jet One Grp., Inc. v. Halycon*

*Jet Holdings, Inc*., No. 08-CV-3980, 2009 WL 2524864, at *5 (E.D.N.Y. Aug. 14, 2009)

(quoting 18 U.S.C. § 1030(a)(2)).  Courts have interpreted the "accesses without authorization"

and "exceeds authorized access" language narrowly to prevent the "creat[ion] [of] a federal

cause of action for incidents and injuries traditionally governed by state contract and tort laws."

*JBCHolding NY, LLC v. Pakter*, 931 F. Supp. 2d 514, 525 (S.D.N.Y. 2013) (citation omitted). As

such, where, as here, a plaintiff alleges that a defendant merely misappropriated information that

he or she otherwise had access to, any CFAA claim should fail.  *See Associated Mortg. Bankers,*

*Inc. v. Calcon Mut. Mortg. LLC*, 159 F. Supp. 3d 324, 335 (E.D.N.Y. 2016) (dismissing CFAA

36

claim where allegations in complaint focused on defendants' misappropriation of data rather than whether defendant inappropriately accessed a computer or exceeded their authority in accessing the data).

As an orthopedic surgeon employed by Plaintiff, Defendant had access to Plaintiff's computer systems and its patients' medical records, which Plaintiff concedes.  (ECF No. 95 at 25); (ECF No. 104 at 50.)  The Amended Complaint states that Defendant "unlawfully, downloaded and misappropriated confidential patient files from Plaintiff's computer system." (ECF No. 24 ¶ 49.)  However, the Complaint does not allege any distinction between the systems that Defendant was authorized to access and those that he was not.  *See Associated Mortg. Bankers, Inc.*, 159 F. Supp. 3d at 335.  And Plaintiff fails to quantify damages or losses as per the minimum dollar amount to make out a claim under the CFAA and only summarily states that it has been harmed over $1 million.  (ECF No. 94 at 32.)

Thus, because Plaintiff merely asserts that Defendant misappropriated information without further information, the undersigned finds that Defendant's argument has merit favoring dismissal.

### E.  Unjust Enrichment

Defendant alleges that the unjust enrichment claim, which is premised on the fraud claim, fails for lack of particularity.  (ECF No. 94 at 33.)  He further contends that this claim sounds in contract.  However, Plaintiff states its claim is not duplicative and the H-1B visa conduct is not covered by a contractual obligation covered by the Agreement.  (ECF No. 95 at 26.)

To state a claim for unjust enrichment, a plaintiff must show that "(1) the defendant was enriched; (2) at the plaintiff's expense; and (3) that it is against equity and good conscience to permit the defendant to retain what is sought to be recovered."  *Ainbinder v. Money Ctr. Fin. Grp., Inc.*, No. 10-CV-5270 (SJF) (AKT), 2013 WL 1335997, at *8 (E.D.N.Y. Feb. 28, 2013),

37

*report and recommendation adopted*, 2013 WL 1335893 (E.D.N.Y. Mar. 25, 2013) (citation omitted).

Courts have found that unjust enrichment claims stemming from the same facts as a fraud claim must be pled with particularity. *See MacNaughton v. Young Living Essential Oils, LLC*, 67 F.4th 89, 99 (2d Cir. 2023) ("An individual alleging an unjust enrichment claim based in fraud must satisfy the heightened pleading standard of 9(b)."); *see also Benefield v. Pfizer Inc*., 103 F. Supp. 3d 449, 465 (S.D.N.Y. 2015) ("Plaintiffs cannot avoid the heightened pleading requirement of Federal Rule 9(b) by casting their fraud claim as one for unjust enrichment.").

As with the fraud claim, Plaintiff's claim for unjust enrichment is premised on the fact that it obtained the visa for Defendant who did not intend to work as per the agreed-upon Employment Agreement. (ECF No. 95 at 26.) However, because it has been recommended that the fraud claim be dismissed based on a lack of specificity, Plaintiff's unjust enrichment claim fails for the same reason. Indeed, the unjust enrichment claim is duplicative of the fraud claim, and therefore may well be dismissed for that reason alone. *Spinnato v. Unity of Omaha Life Ins. Co*., 322 F. Supp. 3d 377, 404 (E.D.N.Y. 2018) (dismissing unjust enrichment claim premised on same facts as fraud claim). This is because "[u]njust enrichment is available as a cause of action only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 483 (S.D.N.Y. 2014) (internal quotation marks and citation omitted). Accordingly, the unjust enrichment claim is duplicative of the fraud claim and the undersigned respectfully recommends dismissal of this claim.

**F. Litigation Privilege**

Defendant contends that the litigation privilege prevents Plaintiff from bringing claims surrounding this lawsuit and the DOL proceeding.  (ECF No. 97 at 14.)  However, Plaintiff states that its claims are beyond the context of those proceedings and therefore the privilege does not apply.  (ECF No. 95 at 26.)

 "The litigation privilege is extremely broad, encompassing 'anything that may possibly or plausibly be relevant or pertinent'" to a litigation.  *Bletas v. DeLuca*, No. 11-cv-1777 (NRB), 2011 U.S. Dist. LEXIS 133132, at *29-30 (S.D.N.Y. Nov. 14, 2011) (internal citations omitted); *see also Tuff-N-Rumble Mgmt., Inc. v. Sugarhill Music Publ'g, Inc*., 49 F. Supp. 2d 673, 681 (S.D.N.Y. 1999) (finding that remarks "made in connection with judicial or quasi-judicial proceedings" are protected under the privilege).

However, the undersigned notes that the privilege is only relevant to claims of defamation, slander or libel, none of which are at play here.  *Wiltz v. New York Univ*., No. 19-cv-03406 (GHW) (SDA), 2019 U.S. Dist. LEXIS 220563, at *38-39 (S.D.N.Y. Dec. 23, 2019) ("[T]he [litigation] privilege applies only to claims for defamation, libel or slander.").  Unlike in the original complaint in the state court where defamation was pled, this is not the case here, in which there is no allegation of defamation, libel, or slander being asserted.[14]

## CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that Plaintiff's motion to amend (ECF No. 89) be denied and that Defendant's cross-motion to dismiss (ECF No. 92) be granted.

## OBJECTIONS

---

[14] Indeed, Defendant's counsel at oral argument stated that the cases it cited to were outside of the defamation context but to the contrary—all of them involved claims of defamation in order to apply the litigation privilege.  (*See* ECF No. 104 at 50-51); (ECF No. 45-2 at 8.)

A copy of this Report and Recommendation is being electronically served on counsel. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report.  28 U.S.C. § 636(b)(1) (2006 & Supp. 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals. *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision"); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (summary order) (same).

Dated:  Central Islip, New York.
          October 4, 2023

                                  **RESPECTFULLY RECOMMENDED**,


                                  /S/ *James M. Wicks*
                                  JAMES M. WICKS
                                  United States Magistrate Judge